# BRADEN *v.* 30TH JUDICIAL CIRCUIT COURT OF KENTUCKY

No. 71–6516.   Argued December 5, 1972—Decided February 28, 1973

BRENNAN, J., delivered the opinion of the Court, in which DOUGLAS, STEWART, WHITE, and MARSHALL, JJ., joined. BLACKMUN, J., filed an opinion concurring in the result, *post*, p. 501. REHNQUIST, J., filed a dissenting opinion, in which BURGER, C. J., and POWELL, J., joined, *post*, p. 502.

*David R. Hood* argued the cause and filed a brief for petitioner.

*John M. Famularo*, Assistant Attorney General of Kentucky, argued the cause for respondent *pro hac vice*. With him on the brief was *Ed W. Hancock*, Attorney General.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Petitioner is presently serving a sentence in an Alabama prison. He applied to the District Court for the Western District of Kentucky for a writ of federal habeas corpus, alleging denial of his constitutional right to a speedy trial, *Smith* v. *Hooey*, 393 U. S. 374 (1969), and praying that an order issue directing respondent to afford him an immediate trial on a then three-year-old Kentucky indictment. We are to consider whether, as petitioner was not physically present within the territorial limits of the District Court for the Western District of Kentucky, the provision of 28 U. S. C. § 2241 (a) that "[w]rits of habeas corpus may be granted by the ... district courts ... *within their respective jurisdictions*" (emphasis supplied), precluded the District Court from

---

*\*Melvin L. Wulf, Sanford Jay Rosen*, and *Joel M. Gora* filed a brief for the American Civil Liberties Union as *amicus curiae* urging reversal.

entertaining petitioner's application. The District Court held that the section did not bar its determination of the application. The court held further that petitioner had been denied a speedy trial and ordered respondent either to secure his presence in Kentucky for trial within 60 days or to dismiss the indictment. The Court of Appeals for the Sixth Circuit reversed on the ground that "the habeas corpus jurisdiction conferred on the federal courts by 28 U. S. C. § 2241 (a) is 'limited to petitions filed by persons physically present within the territorial limits of the District Court.'" 454 F. 2d 145, 146 (1972). We granted certiorari. 407 U. S. 909 (1972). We reverse.

I

On July 31, 1967, the grand jury of the Jefferson County Circuit Court (30th Judicial Circuit of Kentucky) indicted petitioner on one count of storehouse breaking and one count of safebreaking. At the time of the indictment, petitioner was in custody in California, and he was returned to Kentucky to stand trial on the indictment. But on November 13, 1967, he escaped from the custody of Kentucky officials and remained at large until his arrest in Alabama on February 24, 1968. Petitioner was convicted of certain unspecified felonies in the Alabama state courts, and was sentenced to the Alabama state prison, where he was confined when he filed this action.

The validity of petitioner's conviction on the Alabama felonies is not at issue here, just as it was not at issue before the District Court for the Western District of Kentucky. Nor does petitioner challenge the "present effect being given the [Kentucky] detainer by the [Alabama] authorities . . . ." *Nelson* v. *George,* 399 U. S. 224, 225 (1970). He attacks, rather, the validity of the

Kentucky indictment which underlies the detainer lodged against him by officials of that State.

In a *pro se* application for habeas corpus relief to the Federal District Court in the Western District of Kentucky, petitioner alleged that he had made repeated demands for a speedy trial on the Kentucky indictment, that he had been denied his right to a speedy trial, that further delay in trial would impair his ability to defend himself, and that the existence of the Kentucky indictment adversely affected his condition of confinement in Alabama by prejudicing his opportunity for parole. In response to an order to show cause, respondent argued that the District Court lacked jurisdiction because the petitioner was not confined within the district. Respondent added that "petitioner in the case at bar may challenge the legality of any of the adverse effects of any Kentucky detainer against him in Alabama by habeas corpus in the Alabama Federal District Court." App. 6–7. The District Court held, citing *Smith* v. *Hooey*, 393 U. S. 374 (1969), that Kentucky must "attempt to effect the return of a prisoner from a foreign jurisdiction for trial on pending state charges when such prisoner so demands . . . . Since it is the State of Kentucky which must take action, it follows that jurisdiction rests in this district which has jurisdiction over the necessary state officials." App. 9.

Under the constraint of its earlier decision,[1] the Court of Appeals reversed but stated that it "reach[ed] this conclusion reluctantly" because of the possibility that the decision would "result in Braden's inability to find a forum in which to assert his constitutional right to a speedy trial—a right which he is legally entitled to assert at this time under Peyton v. Rowe, 391 U. S. 54

---

[1] *White* v. *Tennessee*, 447 F. 2d 1354 (CA6 1971).

(1968). This is a possibility because the rule in the Fifth Circuit, where [Braden] is incarcerated, appears to be that a district court in the state that has filed the detainer is the proper forum in which to file the petition. *See* May v. Georgia, 409 F. 2d 203 (5th Cir. 1969). *See also* Rodgers v. Louisiana, 418 F. 2d 237 (5th Cir. 1969). Braden thus may find himself ensnared in what has aptly been termed 'Catch 2254'—unable to vindicate his constitutional rights in either of the only two states that could possibly afford a remedy. *See* Tuttle, Catch 2254: Federal Jurisdiction and Interstate Detainers, 32 U. Pitt. L. Rev. 489, 502–03 (1971)." 454 F. 2d, at 146–147.

## II

We granted certiorari to resolve a sharp conflict among the federal courts [2] on the choice of forum where a prisoner attacks an interstate detainer on federal habeas corpus. Before turning to that question, we must make clear that petitioner is entitled to raise his speedy trial claim on federal habeas corpus at this time. First, he is currently "in custody" within the meaning of the federal habeas corpus statute, 28 U. S. C. § 2241 (c)(3). Prior to our decision in *Peyton* v. *Rowe*, 391 U. S. 54 (1968), the "prematurity doctrine" of *McNally* v. *Hill*, 293 U. S. 131 (1934), would, of course, have barred his petition for relief.[3] But our decision in *Peyton* v. *Rowe* discarded the prematurity doctrine, which had permitted

---

[2] Compare *United States ex rel. Meadows* v. *New York*, 426 F. 2d 1176 (CA2 1970), and *Word* v. *North Carolina*, 406 F. 2d 352 (CA4 1969) (proper forum is in the demanding State), with *United States ex rel. Van Scoten* v. *Pennsylvania*, 404 F. 2d 767 (CA3 1968), *Ashley* v. *Washington*, 394 F. 2d 125 (CA9 1968), and *Booker* v. *Arkansas*, 380 F. 2d 240 (CA8 1967) (proper forum is in the State of confinement).

[3] See generally Note, Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1087–1093 (1970).

a prisoner to attack on habeas corpus only his current confinement, and not confinement that would be imposed in the future, and opened the door to this action.[4]

Second, petitioner has exhausted all available state remedies as a prelude to this action. It is true, of course, that he has not yet been tried on the Kentucky indictment, and he can assert a speedy trial defense when, and if, he is finally brought to trial. It is also true, as our Brother REHNQUIST points out in dissent, that federal habeas corpus does not lie, absent "special circumstances," to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court. *Ex parte Royall,* 117 U. S. 241, 253 (1886). Petitioner does not, however, seek at this time to litigate a federal defense to a criminal charge, but only

---

[4] In *Smith* v. *Hooey,* 393 U. S. 374 (1969), we considered a speedy trial claim similar to the one presented in the case before us, and we held that a State which had lodged a detainer against a petitioner in another State must, on the prisoner's demand, "make a diligent, good-faith effort" to bring the prisoner to trial. *Id.,* at 383. But that case arose on direct review of the denial of relief by the state court, and we had no occasion to consider whether the same or similar claims could have been raised on federal habeas corpus. Yet it logically follows from *Peyton* v. *Rowe,* 391 U. S. 54 (1968), that the claims can be raised on collateral attack. In this context, as opposed to the situation presented in *Peyton,* the "future custody" under attack will not be imposed by the same sovereign which holds the petitioner in his current confinement. Nevertheless, the considerations which were held in *Peyton* to warrant a prompt resolu-- tion of the claim also apply with full force in this context. 391 U. S., at 63–64. See *United States ex rel. Meadows* v. *New York, supra,* at 1179. *Word* v. *North Carolina, supra,* at 353–355. Since the Alabama warden acts here as the agent of the Commonwealth of Kentucky in holding the petitioner pursuant to the Kentucky detainer, we have no difficulty concluding that petitioner is "in custody" for purposes of 28 U. S. C. § 2241 (c)(3). On the facts of this case, we need not decide whether, if no detainer had been issued against him, petitioner would be sufficiently "in custody" to attack the Kentucky indictment by an action in habeas corpus.

to demand enforcement of the Commonwealth's affirmative constitutional obligation to bring him promptly to trial. *Smith* v. *Hooey,* 393 U. S. 374 (1969). He has made repeated demands for trial to the courts of Kentucky, offering those courts an opportunity to consider on the merits his constitutional claim of the *present* denial of a speedy trial. Under these circumstances it is clear that he has exhausted all available state court remedies for consideration of that constitutional claim, even though Kentucky has not yet brought him to trial. .

The exhaustion doctrine is a judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a "swift and imperative remedy in all cases of illegal restraint or confinement." *Secretary of State for Home Affairs* v. *O'Brien,* [1923] A. C. 603, 609 (H. L.). It cannot be used as a blunderbuss to shatter the attempt at litigation of constitutional claims without regard to the purposes that underlie the doctrine and that called it into existence. As applied in our earlier decisions, the doctrine

> "preserves the role of the state courts in the application and enforcement of federal law. Early federal intervention in state criminal proceedings would tend to remove federal questions from the state courts, isolate those courts from constitutional issues, and thereby remove their understanding of and hospitality to federally protected interests. Second, [the doctrine] preserves orderly administration of state judicial business, preventing the interruption of state adjudication by federal habeas proceedings. It is important that petitioners reach state appellate courts, which can develop and correct errors of state and federal law and most effectively ·supervise and

impose uniformity on trial courts." Note, Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1094 (1970).

See *Darr* v. *Burford,* 339 U. S. 200, 204–206 (1950), and the case which overruled it, *Fay* v. *Noia,* 372 U. S. 391, 417–420 (1963). See also *Ex parte Royall, supra,* at 251–252; *Ex parte Hawk,* 321 U. S. 114 (1944); cf. *Younger* v. *Harris,* 401 U. S. 37 (1971); *Stefanelli* v. *Minard,* 342 U. S. 117 (1951).

The fundamental interests underlying the exhaustion doctrine have been fully satisfied in petitioner's situation. He has already presented his federal constitutional claim of a *present* denial of a speedy trial to the courts of Kentucky. The state courts rejected the claim, apparently on the ground that since he had once escaped from custody the Commonwealth should not be obligated to incur the risk of another escape by returning him for trial. Petitioner exhausted all available state court opportunities to establish his position that the prior escape did not obviate the Commonwealth's duty under *Smith* v. *Hooey, supra.* Moreover, petitioner made no effort to abort a state proceeding or to disrupt the orderly functioning of state judicial processes. He comes to federal court, not in an effort to forestall a state prosecution, but to enforce the Commonwealth's obligation to provide him with a state court forum. He delayed his application for federal relief until the state courts had conclusively determined that his prosecution was temporarily moribund. Since petitioner began serving the second of two 10-year Alabama sentences in March 1972, the revival of the prosecution may be delayed until as late as 1982. A federal habeas corpus action at this time and under these circumstances

does not jeopardize any legitimate interest of federalism.[5]
Respondent apparently shares that view since it specifi-
cally concedes that petitioner has exhausted all available
state remedies, Tr. of Oral Arg. 41.

In the case before us, the Court of Appeals held—not
surprisingly, in view of the considerations discussed
above—that even though petitioner had chosen the wrong
forum, his speedy trial claim was one "which he is legally
entitled to assert at this time under Peyton v. Rowe, 391
U. S. 54 (1968)." 454 F. 2d, at 146. And the District
Court, which upheld on the merits petitioner's speedy

---

[5] Cf. *Baker* v. *Grice,* 169 U. S. 284 (1898), where this Court held
that a petitioner for a writ of habeas corpus had failed to exhaust
state court remedies. In rejecting each of the grounds relied on by
the federal court below in concluding that special circumstances war-
ranted that court's immediate intervention, this Court stated:

"It is also said that since the trial of Hathaway and the granting
of a new trial to him the case of the petitioner [Grice] has not
been called for trial, and that two terms of court since the granting
of a new trial to Hathaway had come and the second one was about
expiring at the time when the petitioner filed his petition in the
Circuit Court for this writ. Here, again, there is no allegation and
no proof that any attempt had been made on the part of this peti-
tioner to obtain a trial in the state court or that he had been refused
such trial by that court upon any application which he made. It
is the simple case of a failure to call the indictment for trial, the
petitioner being in the meantime on bail and making no effort to
obtain a trial and evincing no desire by way of a demand that a
trial in his case should be had.

"We do not say that a refusal to try a person who is on bail can
furnish any foundation for a resort to the Federal courts, even in
cases in which a trial may involve Federal questions, but in this case
no refusal is shown. A mere omission to move the case for trial (the
party being on bail) is all that is set up, coupled with the assertion
that defendant was eager and anxious for trial, but showing no action
whatever on his part which might render such anxiety and eagerness
known to the state authorities." *Id.,* at 292–293.

Cf. *Young* v. *Ragen,* 337 U. S. 235, 238–239 (1949); *Marino*
v. *Ragen,* 332 U. S. 561, 563–570 (1947) (Rutledge, J., concurring).

trial claim, necessarily adopted that view. Indeed, the great majority of lower federal courts which have considered the question since *Smith* v. *Hooey, supra,* have reached this same, and indisputably correct, conclusion.[6]

We emphasize that nothing we have said would permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court. The contention in dissent that our decision converts federal habeas corpus into "a pretrial-motion forum for state prisoners," wholly misapprehends today's holding.

## III

Accordingly, we turn to the determination of the forum in which the petition for habeas corpus should be brought. In terms of traditional venue considerations, the District Court for the Western District of Kentucky is almost surely the most desirable forum for the adjudication of the claim.[7] It is in Kentucky, where all of the material events took place, that the records and witnesses perti-

---

[6] See *Chauncey* v. *Second Judicial District Court,* 453 F. 2d 389, 390 n. 1 (CA9 1971); *Beck* v. *United States,* 442 F. 2d 1037 (CA5 1971); *Kane* v. *Virginia,* 419 F. 2d 1369 (CA4 1970); *May* v. *Georgia,* 409 F. 2d 203 (CA5 1969); *White* v. *Coleman,* 341 F. Supp. 272, 274 (WD Ky. 1971) (dictum); *United States ex rel. Pitts* v. *Rundle,* 325 F. Supp. 480 (ED Pa. 1971) (dictum); *Williams* v. *Pennsylvania,* 315 F. Supp. 1261 (WD Mo. 1970) (dictum); *Varallo* v. *Ohio,* 312 F. Supp. 45 (ED Tex. 1970) (dictum); *Campbell* v. *Smith,* 308 F. Supp. 796 (SD Ga. 1970); *Piper* v. *United States,* 306 F. Supp. 1259 (Conn. 1969) (dictum); *United States ex rel. White* v. *Hocker,* 306 F. Supp. 485 (Nev. 1969). But see *Lawrence* v. *Blackwell,* 298 F. Supp. 708 (ND Ga. 1969); *Carnage* v. *Sanborn,* 304 F. Supp. 857 (ND Ga. 1969); *Kirk* v. *Oklahoma,* 300 F. Supp. 453 (WD Okla. 1969) (alternative holding).

[7] See *United States* v. *Hayman,* 342 U. S. 205 (1952), discussing the legislative history of 28 U. S. C. § 2255; S. Rep. No. 1502, 89th Cong., 2d Sess., 2 (1966), discussing 28 U. S. C. § 2241 (d); Uniform Post-Conviction Procedure Act § 3; American Bar Association Project on Standards for Criminal Justice, Post-Conviction Remedies § 1.4,

nent to petitioner's claim are likely to be found. And that forum is presumably no less convenient for the respondent and the Commonwealth of Kentucky, than for the petitioner. The expense and risk of transporting the petitioner to the Western District of Kentucky, should his presence at a hearing prove necessary, would in all likelihood be outweighed by the difficulties of transporting records and witnesses from Kentucky to the district where petitioner is confined.[8] Indeed, respondent makes clear that "on balance, it would appear simpler and less expensive for the State of Kentucky to litigate such questions [as those involved in this case] in one of its own Federal judicial districts." Brief for Respondent 6.

But respondent insists that however the balance of convenience might be struck with reference to the question of venue, the choice of forum is rigidly and jurisdictionally controlled by the provision of § 2241 (a) that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge *within their respective jurisdictions.*" 28 U. S. C. § 2241 (a) (emphasis supplied). Relying on our decision in *Ahrens* v. *Clark,* 335 U. S. 188 (1948), respondent contends—and the Court of Appeals held—that the italicized words limit a District Court's habeas corpus jurisdiction to cases where the prisoner seeking relief is confined within its territorial jurisdiction. Since that interpretation is not compelled either by the language of the statute or by the decision in *Ahrens,* and since it is fundamentally at odds with the purposes of the statutory scheme, we cannot agree.

The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds

---

p. 28 (approved draft 1968); Note, Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1161 (1970).

[8] S. Rep. No. 1526, 80th Cong., 2d Sess., 3 (1948).

him in what is alleged to be unlawful custody. *Wales* v. *Whitney,* 114 U. S. 564, 574 (1885). In the classic statement:

> "The important fact to be observed in regard to the mode of procedure upon this writ is, that it is directed to, and served upon, not the person confined, but his jailer. It does not reach the former except through the latter. The officer or person who serves it does not unbar the prison doors, and set the prisoner free, but the court relieves him by compelling the oppressor to release his constraint. The whole force of the writ is spent upon the respondent." *In the Matter of Jackson,* 15 Mich. 417, 439–440 (1867), quoted with approval in *Ex parte Endo,* 323 U. S. 283, 306 (1944).

See also *Ahrens* v. *Clark,* 335 U. S., at 196–197 (Rutledge, J., dissenting).

Read literally, the language of § 2241 (a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ "within its jurisdiction" requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

Nevertheless, there is language in our opinion in *Ahrens* v. *Clark, supra,* indicating that the prisoner's presence within the territorial confines of the district is an invariable prerequisite to the exercise of the District Court's habeas corpus jurisdiction. In *Ahrens,* 120 German nationals confined at Ellis Island, New York, pending deportation sought habeas corpus on the principal ground that the removal orders exceeded the President's statutory authority under the Alien Enemy Act of 1798.

They filed their petitions in the District Court for the District of Columbia, naming as respondent the Attorney General of the United States. Construing the statutory predecessor to § 2241 (a), we held that the phrase, "within their respective jurisdictions," precluded the District Court for the District of Columbia from inquiring into the validity of the prisoners' detention at Ellis Island, and we therefore affirmed the dismissal of the petitions on jurisdictional grounds.

Our decision in *Ahrens* rested on the view that Congress' paramount concern was the risk and expense attendant to the "production of prisoners from remote sections, perhaps thousands of miles from the District Court that issued the writ. The opportunities for escape afforded by travel, the cost of transportation, the administrative burden of such an undertaking negate such a purpose." 335 U. S., at 191. And we found support for that assumption in the legislative history of the Act.[9] During the course of Senate debate on the habeas corpus statute of 1867,[10] the bill was criticized on the ground that it would permit "a district judge in Florida to bring before him some men convicted and sentenced and held under imprisonment in the State of Vermont or in any of the further States." Cong. Globe, 39th Cong., 2d Sess., 730. Senator Trumbull, sponsor of the bill, met the objection with an amendment adding the words, "within their respective jurisdictions," as a circumscription of the power of the district courts to issue the writ.[11]

---

[9] But see Fairman, Some New Problems of the Constitution Following the Flag, 1 Stan. L. Rev. 587, 633–640 (1949).

[10] Act of Feb. 5, 1867, 14 Stat. 385.

[11] As passed, the statute provided:

"That the several courts of the United States, and the several justices and judges of such courts, within their respective jurisdic-

But developments since *Ahrens* have had a profound impact on the continuing vitality of that decision. First, in the course of overruling the application of *Ahrens* to the ordinary case where a prisoner attacks the conviction and sentence of a federal or state court, Congress has indicated that a number of the premises which were thought to require that decision are untenable. A 1950 amendment to the habeas corpus statute requires that a collateral attack on a federal sentence be brought in the sentencing court rather than the district where the prisoner is confined. 28 U. S. C. § 2255. Similarly, a prisoner contesting a conviction and sentence of a state court of a State which contains two or more federal judicial districts, who is confined in a district within the State other than that in which the sentencing court is located, has the option of seeking habeas corpus either in the district where he is confined or the district where the sentencing court is located. 28 U. S. C. § 2241 (d).[12] In enacting these amendments, Congress explicitly recognized the substantial advantages of having these cases resolved in the court which originally imposed the confinement or in the court located nearest the site of the underlying controversy.[13] And Congress has further

tions . . . shall have power to grant writs of habeas corpus . . . ." 14 Stat. 385.

[12] The amendment was adopted in 1966.

[13] See H. R. Rep. No. 1894, 89th Cong., 2d Sess. (1966); S. Rep. No. 1502, 89th Cong., 2d Sess. (1966) (legislative history of amendments to 28 U. S. C. § 2241 (d)); *United States* v. *Hayman*, 342 U. S. 205 (1952) (discussing legislative history of 28 U. S. C. § 2255). Of course, these amendments were not motivated solely by a desire to insure that the disputes could be resolved in the most convenient forum. It was also a critical part of the congressional purpose to avoid the vastly disproportionate burden of handling habeas corpus petitions which had fallen, prior to the amendments, on those districts in which large numbers of prisoners are confined.

challenged the theoretical underpinnings of the decision by codifying in the habeas corpus statute a procedure we sanctioned in *Walker* v. *Johnston,* 312 U. S. 275, 284 (1941), whereby a petition for habeas corpus can in many instances be resolved without requiring the presence of the petitioner before the court that adjudicates his claim. 28 U. S. C. § 2243. See also *United States* v. *Hayman,* 342 U. S. 205, 222–223 (1952).[14]

This Court, too, has undercut some of the premises of the *Ahrens* decision. Where American citizens confined overseas (and thus outside the territory of any district court) have sought relief in habeas corpus, we have held, if only implicitly, that the petitioners' absence from the district does not present a jurisdictional obstacle to the consideration of the claim. *Burns* v. *Wilson,* 346 U. S. 137 (1953), rehearing denied, 346 U. S. 844, 851–852 (opinion of Frankfurter, J.); cf. *Toth* v. *Quarles,* 350 U. S. 11 (1955); *Hirota* v. *MacArthur,* 338 U. S. 197, 199 (1948) (DOUGLAS, J., concurring (1949)).

A further, critical development since our decision in *Ahrens* is the emergence of new classes of prisoners who are able to petition for habeas corpus because of the adoption of a more expansive definition of the "custody" requirement of the habeas statute. See *Peyton* v. *Rowe,* 391 U. S. 54 (1968); *Carafas* v. *LaVallee,* 391 U. S. 234 (1968); *Jones* v. *Cunningham,* 371 U. S. 236 (1963). The overruling of *McNally* v. *Hill,* 293 U. S. 131 (1934), made it possible for prisoners in custody under one sentence to attack a sentence which they had not yet begun to serve. And it also enabled a petitioner held in one State to attack a detainer lodged against him by another State. In such a case, the State holding the prisoner in immediate confinement acts as agent for the demanding

---

[14] See Note, Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1189–1191 (1970).

.

State,[15] and the custodian State is presumably indifferent to the resolution of prisoner's attack on the detainer. Here, for example, the petitioner is confined in Alabama, but his dispute is with the Commonwealth of Kentucky, not the State of Alabama. Under these circumstances it would serve no useful purpose to apply the *Ahrens* rule and require that the action be brought in Alabama. In fact, a slavish application of the rule would jar with the very purpose underlying the addition of the phrase, "within their respective jurisdictions." We cannot assume that Congress intended to require the Commonwealth of Kentucky to defend its action in a distant State and to preclude the resolution of the dispute by a federal judge familiar with the laws and practices of Kentucky.[16] See *United States ex rel. Meadows* v. *New York,* 426 F. 2d 1176, 1181 (CA2 1970); *Word* v. *North Carolina,* 406 F. 2d 352 (CA4 1969).

## IV

In view of these developments since *Ahrens* v. *Clark,* we can no longer view that decision as establishing an

[15] Nothing in this opinion should be taken to preclude the exercise of concurrent habeas corpus jurisdiction over the petitioner's claim by a federal district court in the district of confinement. But as we have made clear above, that forum will not in the ordinary case prove as convenient as the district court in the State which has lodged the detainer. Where a prisoner brings an action in the district of confinement attacking a detainer lodged by another State, the court can, of course, transfer the suit to a more convenient forum. 28 U. S. C. § 1404 (a). *Hoffman* v. *Blaski,* 363 U. S. 335 (1960).

[16] Obviously, since petitioner could not have presented his habeas corpus claim prior to our 1968 decision in *Peyton* v. *Rowe, supra,* and since the choice-of-forum provisions in the habeas corpus statute were most recently amended in 1966, see n. 13, *supra,* we can hardly draw any inference from the fact that the amendment did not specifically overrule *Ahrens* with respect to the type of case now before us.

inflexible jurisdictional rule, dictating the choice of an inconvenient forum even in a class of cases which could not have been foreseen at the time of our decision.[17]   Of course, in many instances the district in which petitioners are held will be the most convenient forum for the litigation of their claims.   On the facts of *Ahrens* itself, for example, petitioners could have challenged their detention by bringing an action in the Eastern District of New York against the federal officials who confined them in that district.   No reason is apparent why the District of Columbia would have been a more convenient forum, or why the Government should have undertaken the burden of transporting 120 detainees to a hearing in the District of Columbia.   Under these circumstances, traditional principles of venue would have mandated the bringing of the action in the Eastern District of New York, rather than the District of Columbia.   *Ahrens* v. *Clark* stands for no broader proposition.

Since the petitioner's absence from the Western District of Kentucky did not deprive the court of jurisdiction, and since the respondent was properly served in that district, see *Strait* v. *Laird,* 406 U. S. 341 (1972); *Schlanger* v. *Seamans,* 401 U. S. 487 (1971), the court below erred in ordering the dismissal of the petition on jurisdictional grounds.   The judgment of the Court of

---

[17] In *Nelson* v. *George,* 399 U. S. 224, 228 n. 5 (1970), we adverted to, but reserved judgment on, the precise question at issue here.   We did point out, however, that the "obvious, logical, and practical solution is an amendment to § 2241 to remedy the shortcoming that has become apparent following the holding in *Peyton* v. *Rowe.*   Sound judicial administration calls for such an amendment."   We note that an amendment to § 2241 drafted by the Administrative Conference of the United States Courts was introduced during the 92d Congress, but no action was taken upon it.

Appeals is reversed and the case is remanded for proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACKMUN, concurring in the result.

I concur in the result. The conclusion the Court reaches is not unexpected when one notes the extraordinary expansion of the concept of habeas corpus effected in recent years. See *Ex parte Hull,* 312 U. S. 546 (1941); *Ex parte Endo,* 323 U. S. 283 (1944); *Jones* v. *Cunningham,* 371 U. S. 236 (1963); *Peyton* v. *Rowe,* 391 U. S. 54 (1968); *Carafas* v. *LaVallee,* 391 U. S. 234 (1968); *Nelson* v. *George,* 399 U. S. 224 (1970). Cf. *Schlanger* v. *Seamans,* 401 U. S. 487 (1971). A trend of this kind, once begun, easily assumes startling proportions. The present case is but one more step, with the Alabama warden now made the agent of the Commonwealth of Kentucky.

I do not go so far as to say that on the facts of this case the result is necessarily wrong. I merely point out that we have come a long way from the traditional notions of the Great Writ. The common-law scholars of the past hardly would recognize what the Court has developed, see 4 W. Blackstone, Commentaries *131–134, and they would, I suspect, conclude that it is not for the better.

The result in this case is not without its irony. The petitioner's speedy trial claim follows upon his escape from Kentucky custody after that State, at its expense, had returned the petitioner from California to stand trial in Kentucky. Had he not escaped, his Kentucky trial would have taken place five years ago. Furthermore, the petitioner is free to assert his speedy trial claim in the Kentucky courts if and when he is brought to trial there.

And the claim, already strong on the facts here, increases in strength as time goes by.

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and MR. JUSTICE POWELL concur, dissenting.

Today the Court overrules *Ahrens* v. *Clark,* 335 U. S. 188 (1948), which construed the legislative intent of Congress in enacting the lineal predecessor of 28 U. S. C. § 2241. Although considerations of "convenience" may support the result reached in this case, those considerations are, in this context, appropriate for Congress, not this Court, to make. Congress has not legislatively overruled *Ahrens,* and subsequent "developments" are simply irrelevant to the judicial task of ascertaining the legislative intent of Congress in providing, in 1867, that federal district courts may issue writs of habeas corpus "within their respective jurisdictions" for prisoners in the custody of state authorities. The Court, however, not only accomplishes a feat of judicial prestidigitation but, without discussion or analysis, explicitly extends the scope of *Peyton* v. *Rowe,* 391 U. S. 54 (1968), and implicitly rejects *Ex parte Royall,* 117 U. S. 241 (1886).

## I

In order to appreciate the full impact of the Court's decision, a brief reiteration of the procedural stance of the case at the time the petition for habeas corpus was filed is necessary. Petitioner is incarcerated in Alabama pursuant to a state court judgment, the validity of which petitioner does not attack. Petitioner had been indicted in Kentucky and a detainer filed by Kentucky authorities with the Alabama authorities. Kentucky had conducted no proceedings against petitioner; no judgment of conviction on the Kentucky indictment had been obtained. From Alabama, petitioner requested Kentucky authorities to ask the Alabama authorities to de-

liver him to Kentucky so that petitioner could be tried on the Kentucky indictment. No action was taken on this request, and the Kentucky Supreme Court refused to issue a writ of mandamus requiring Kentucky authorities to request that Alabama deliver petitioner for trial in Kentucky. Petitioner then filed the instant habeas corpus proceeding in Kentucky, contending that he was "in custody" of Kentucky authorities and that the "custody" was illegal because he had been denied his right to a speedy trial. Petitioner is not seeking to attack collaterally a state judgment of conviction in federal court. In substance, petitioner is seeking, prior to trial, to force the Commonwealth of Kentucky to litigate a question that otherwise could only be raised as an absolute defense in a state criminal proceeding against petitioner.

## II

The first inquiry is whether a state prisoner can, prior to trial, raise the claim of the denial of a right to a speedy trial by petitioning a federal court for writ of habeas corpus. The Court reasons that since *Peyton* v. *Rowe, supra,* "discarded the prematurity doctrine," *ante,* at 488, "petitioner is entitled to raise his speedy trial claim on federal habeas corpus."

Petitioner filed this petition alleging federal jurisdiction pursuant to 28 U. S. C. §§ 2241, 2254. Section 2254 pertains only to a prisoner in custody pursuant to a *judgment of conviction* of a state court; in the context of the attempt to assert a right to a speedy trial, there is simply no § 2254 trap to "ensnare" petitioner, such as the court below felt existed. The issue here is whether habeas corpus is warranted under § 2241 (c)(3); that section empowers district courts to issue the writ, *inter alia,* before a judgment is rendered in a criminal proceeding. It is in the context of an application for federal habeas

corpus by a state prisoner prior to any trial in a state court that the effect of the instant decision must be analyzed.

The Court reasons that since *Smith* v. *Hooey,* 393 U. S. 374 (1969), held that a State must, consistent with the Sixth and Fourteenth Amendments, "make a diligent, good-faith effort to bring" a prisoner to trial on a state indictment even though he is incarcerated in another jurisdiction, *id.,* at 383, and, since *Peyton* v. *Rowe, supra,* overruled "the prematurity doctrine," therefore, a prisoner can attack in a federal habeas corpus proceeding the validity of an indictment lodged against him in one State even though he is imprisoned in another. I cannot agree with this reasoning.

In *Smith,* this Court held that a State must make an effort to try a person even though he was incarcerated in another jurisdiction. That case did not, however, involve federal habeas corpus. It came here on certiorari after the state court had denied a petition for a writ of mandamus seeking to have the underlying indictment dismissed. The Texas Supreme Court had ruled that the state courts had no power to order the federal prisoner produced for trial on the state indictment. This Court reversed, holding that, in view of the Sixth and Fourteenth Amendment guarantees of a speedy trial, the State must, after demand therefor, attempt to obtain the prisoner from the sovereignty with custody over the prisoner.

It by no means follows, however, that a state prisoner can assert the right to a speedy trial in a federal district court. The fundamental flaw in the reasoning of the Court is the assumption that since a prisoner has some "right" under *Smith* v. *Hooey, supra,* he must have some forum in which affirmatively to assert that right, and that therefore the right may be vindicated in a federal district court under § 2241 (c) (3). *Smith* v. *Hooey* did

not, however, establish that a right distinct from the right to a speedy trial existed. It merely held that a State could not totally rely on the fact that it could not order that a prisoner be brought from another jurisdiction as a justification for not attempting to try the defendant as expeditiously as possible. The right to a speedy trial is, like other constitutional rights, a defense to a criminal charge, but one which, unlike others, increases in terms of potential benefit to the accused with the passage of time. *Barker* v. *Wingo,* 407 U. S. 514 (1972). The fact that a State must make an effort to obtain a defendant from another sovereign for trial but fails, after demand, to make an effort would weigh heavily in the defendant's favor. But *Smith* v. *Hooey* does not necessarily imply that federal courts may, as the District Court did in this case, in effect, issue an injunction requiring a state court to conduct a criminal trial. If the State fails to perform its duty, *Smith* v. *Hooey,* it must face the consequences of possibly not obtaining a conviction, *Barker* v. *Wingo.* But the fact that the State has a duty by no means leads to the conclusion that the failure to perform that duty can be raised by a prospective defendant on federal habeas corpus in advance of trial. The history of habeas corpus and the principles of federalism strongly support the approach established by *Ex parte Royall, supra,* that, absent extraordinary circumstances, federal habeas corpus should not be used to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court.

The Court's reasoning for allowing a state prisoner to resort to federal habeas corpus is that the prisoner is attacking the validity of a "future custody." The Court relies on *Peyton* to justify federal jurisdiction. *Peyton,* however, was in a significantly different procedural posture from the instant case. There, the Court held that a

state prisoner could challenge the constitutional validity of a sentence which he had not yet begun to serve when he was currently incarcerated pursuant to a valid conviction and sentence, but the sentence he sought to attack was to run consecutively to the valid sentence. Even though a person may be "in custody" for purposes of §§ 2241 (c)(3), or 2254, if he has not yet begun to serve a sentence entered after a judgment of conviction, as the Court held in *Peyton,* it by no means follows that he is similarly "in custody" when no judgment of conviction has been entered or even any trial on the underlying charge conducted. The Court's suggestion that a person may challenge by way of federal habeas corpus any custody that might possibly be imposed at some time in the "future," which suggestion unwarrantedly assumes both that a constitutional defense will be rejected and that the jury will convict, is not supported by the language or reasoning of *Peyton.* Mr. Chief Justice Warren, writing for the Court in *Peyton,* emphasized the role of federal habeas corpus for state prisoners as "substantially a post-conviction device," 391 U. S., at 60, and "the instrument for resolving fact issues not adequately developed in the original proceedings." *Id.,* at 63. The Court there stated that the demise of the *McNally* rule would allow prisoners "the opportunity to challenge defective convictions." *Id.,* at 65.

The Court here glosses over the disparate procedural posture of this case, and merely asserts, without analyzing the historical function of federal habeas corpus for state prisoners, that the rationale of *Peyton* is applicable to a pretrial, preconviction situation. Citation to that decision cannot obscure the fact that the Court here makes a significant departure from previous decisions, a departure that certainly requires analysis and justification more detailed than that which the Court puts forth.

There is no doubt that a prisoner such as petitioner can assert, by appropriate motion in the courts of the State in which the indictment was handed down, that he should be brought to trial on that charge. *Smith* v. *Hooey, supra.* There is also no doubt that such a prisoner may *petition* a federal district court for a writ of habeas corpus prior to trial. See 28 U. S. C. § 2241 (c)(3). What the Court here disregards, however, is almost a century of decisions of this Court to the effect that federal habeas corpus for state prisoners, prior to conviction, should not be granted absent truly extraordinary circumstances.

In *Ex parte Royall, supra,* the petitioner was indicted in state court for selling a bond coupon without a license. Prior to trial on that indictment, he petitioned in federal court for a writ of habeas corpus, contending that the statute upon which the indictment was predicated violated the contract clause, insofar as it was applied to owners of coupons. In holding that the (then) Circuit Court had the power to issue the writ but had properly exercised its discretion not to do so, the Court wrote:

> "That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution." 117 U. S., at 251.

The judicial approach set forth in *Ex parte Royall*— that federal courts should not, absent extraordinary circumstances, interfere with the judicial administration and process of state courts prior to trial and conviction, even though the state prisoner claims that he is held in violation of the Constitution—has been consistently followed. *Cook* v. *Hart,* 146 U. S. 183 (1892) (custody

alleged to violate Art. 4, § 2); *New York* v. *Eno,* 155 U. S. 89 (1894) (custody alleged to violate Supremacy Clause); *Whitten* v. *Tomlinson,* 160 U. S. 231 (1895) (custody alleged in violation of Constitution due to improper extradition); *Drury* v. *Lewis,* 200 U. S. 1 (1906) (custody alleged to violate Supremacy Clause). Cf. *Ex parte Fonda,* 117 U. S. 516 (1886); *In re Duncan,* 139 U. S. 449 (1891); *In re Wood,* 140 U. S. 278 (1891); *In re Frederich,* 149 U. S. 70 (1893). The situations in which pretrial or preconviction federal interference by way of habeas corpus with state criminal processes is justified involve the lack of jurisdiction, under the Supremacy Clause, for the State to bring any criminal charges against the petitioner. *Wildenhus's Case,* 120 U. S. 1 (1887); *In re Loney,* 134 U. S. 372 (1890); *In re Neagle,* 135 U. S. 1 (1890).

The effect of today's ruling that federal habeas corpus prior to trial is appropriate because it will determine the validity of custody that *may* be imposed in actuality only sometime in the indefinite future constitutes an unjustifiable federal interference with the judicial administration of a State's criminal laws. The use of federal habeas corpus is, presumably, limited neither to the interstate detainer situation nor to the constitutional rights secured by the Sixth and Fourteenth Amendments. The same reasoning would apply to a state prisoner who alleges that "future custody" will result because the State plans to introduce at a criminal trial sometime in the future a confession allegedly obtained in violation of the Fifth and Fourteenth Amendments, or evidence obtained in violation of the Fourth and Fourteenth Amendments. I thoroughly disagree with this conversion of federal habeas corpus into a pretrial-motion forum for state prisoners.

## III

In addition to sanctioning an expansion of *when* a federal court may interfere with state judicial administration, the Court overrules *Ahrens* v. *Clark, supra,* and expands the parameters of which federal courts may so intervene. In *Ahrens,* the Court held that "the presence within the territorial jurisdiction of the District Court of the person detained is [a] prerequisite to filing a petition for writ of *habeas corpus.*" 335 U. S., at 189. The Court construed the phrase "within their respective jurisdictions" to mean that Congress intended to limit the jurisdiction of a district court to prisoners in custody within its territorial jurisdiction. *Id.,* at 193.

The Court here says that the "language" of *Ahrens* "indicates" the result reached below. The explicit holding of the Court, however, is plainly much more than an "indication."

> "Thus the view that the jurisdiction of the District Court to issue the writ in cases such as this is restricted to those petitioners who are confined or detained within the territorial jurisdiction of the court is supported by the language of the statute, by considerations of policy, and by the legislative history of the enactment. We therefore do not feel free to weigh the policy considerations which are advanced for giving district courts discretion in cases like this. *If that concept is to be imported into this statute, Congress must do so.*" *Id.,* at 192–193 (emphasis added; footnote omitted).

The result reached today may be desirable from the point of view of sound judicial administration, see *Ahrens* v. *Clark, supra,* at 191; *Nelson* v. *George,* 399 U. S. 224, 228 n. 5 (1970). It is the function of this Court, however, to ascertain the intent of Congress as to the mean-

ing of "within their respective jurisdictions." Having completed that task in *Ahrens*, it is the function of Congress to amend the statute if this Court misinterpreted congressional intent or if subsequent developments suggest the desirability, from a policy viewpoint, of alterations in the statute. See *Cleveland* v. *United States*, 329 U. S. 14 (1946). We noted in *Nelson* that the resolution of any apparent dilemma "caused" by this Court's holding in *Ahrens* is appropriately one to be undertaken by Congress. 399 U. S., at 228 n. 5. Legislative "inaction" in amending a statute to comport with this Court's evaluation of "[s]ound judicial administration" hardly warrants the disingenuous reading of a previous decision to achieve the result that Congress, despite judicial prodding, has refused to mandate. However impatient we may be with a federal statute which sometimes may fail to provide a remedy for every situation, one would have thought it inappropriate for the Court to amend the statute by judicial action.

The Court lists several "developments" that have somehow undercut the validity, in the Court's opinion, of the statutory interpretation of the phrase "within their respective jurisdictions." As the amended § 2255 is relevant only to *federal* prisoners collaterally attacking a conviction, and as § 2241 (d) applies only to *intrastate* jurisdiction, the relevance of the amendments with respect to the jurisdictional requirement of § 2241 (c)(3) is not a little obscure. The interpretation of the phrase "within their respective jurisdictions" in *Ahrens* is hardly incompatible with these recent amendments of statutes dealing with situations not involving the interstate transportation of state prisoners. The further argument that *Burns* v. *Wilson*, 346 U. S. 137 (1953), "undermines" *Ahrens* overlooks the fact that the Court in *Ahrens* specifically reserved that question, 335 U. S., at 192 n. 4, the resolution of which is by no means an explicit rejec-

tion of *Ahrens.* Finally, the fact that this Court has expanded the notion of "custody" for habeas corpus purposes hardly supports, much less compels, the rejection of a statutory construction of an unrelated phrase.

In the final analysis, the Court apparently reasons that since Congress amended other statutory provisions dealing with habeas corpus, therefore the congressional intent with respect to the meaning of an unamended phrase must somehow have changed since the Court previously ascertained that intent. This approach to statutory construction, however, justifies with as much, if not more, force, the result reached below: Congress, aware of this Court's interpretation of the phrase in *Ahrens,* deliberately chose not to amend § 2241 (c)(3) when it selectively amended other statutory provisions dealing with federal habeas corpus. Indeed, the most recent indications of legislative intent support this conclusion rather than that advanced by the Court. See H. R. Rep. No. 1894, 89th Cong., 2d Sess., 1–2 (1966); S. Rep. No. 1502, 89th Cong., 2d Sess. (1966). See also n. 13, *ante,* at 497.

I would adhere to this Court's interpretation of the legislative intent set forth in *Ahrens* v. *Clark, supra,* and leave it to Congress, during the process of considering legislation to amend this section, to consider and to weigh the various policy factors that the Court today weighs for itself.