Milton **PARNESS**, Plaintiff,

v.

The **UNITED STATES PAROLE COMMISSION and the Warden, Metropolitan Correctional Center, Defendants.**

No. 80 Civ. 0269 (KTD).

United States District Court, S. D. New York.

March 31, 1980.

Saxe, Bacon & Bolan, P.C., New York City, for plaintiff; Michael Rosen, New York City, of counsel.

William M. Tendy, U. S. Atty., S. D. New York, New York City, for defendants; Barbara L. Schulman, Asst. U. S. Atty., New York City, of counsel.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

■ Generally, the question of whether a federal prisoner is entitled to be released on parole is one properly left to the discretion of the United States Parole Commission,

[hereinafter "the Commission"]. See 28 C.F.R. § 2.1 *et seq.* Indeed, judicial intervention is appropriate only when the Commission has exceeded its authority or abused its discretion. This is just such a case.

The plaintiff, Milton Parness, is not a stranger to this Court. In January of this year, he commenced this action against the United States Parole Commission and the Warden of the Metropolitan Correctional Facility seeking to enjoin the Commission from delaying his effective date of parole. I denied the injunction in an opinion, 488 F.Supp. 100, dated January 22, 1980. The plaintiff now seeks to enjoin the Commission from again delaying a subsequent effective date of parole. At this juncture the request must be granted.

A hearing was held before me on March 28. The parties were afforded an opportunity to brief the issues and orally state their positions. Based upon this oral argument and the memoranda and affidavits submitted by the parties, the following shall constitute my findings of fact and conclusions of law.

In April, 1979, Milton Parness was incarcerated at the Metropolitan Correctional Center [hereinafter "MCC"], serving a ten year sentence on convictions for Racketeering and Interstate Transportation of Stolen Securities. At that time he was given an initial parole hearing after which the Commission granted him a "presumptive parole" designating January 11, 1980, as a "tentative" release date. Under the applicable federal regulations, however, this grant of parole was conditioned upon the payment or discharge of a committed fine and upon Parness "maintaining good institutional conduct." See Exhibit 1 to the affidavit of Joseph A. Nardoza, dated January 16, 1980 [hereinafter "Nardoza affidavit"].

In an attempt to have Parness' release date revoked, Assistant United States Attorney ("AUSA") Costello informed the Commission, by letter dated December 18, 1979, that while a federal prisoner at the MCC, Parness was quite possibly engaged

in criminal conduct. The Commission also received a letter, dated December 21, 1979, from Parness' counsel in response to the Costello letter.

Thereafter, on January 3, 1980, while in receipt of the above mentioned communications, the Commission decided to change Parness' presumptive parole into an effective parole for January 11, 1980. The Commission concluded that the Costello letter was insufficient to warrant a rescission of the parole date. The Commission was particularly disturbed by the fact that Mr. Parness was not being prosecuted for his alleged criminal activity. Moreover, the Commission was not presented with a preview of the evidence which would be available to it should Parness' case be reopened. See Nardoza affidavit at ¶ 7.

Undaunted, AUSA Costello composed yet another letter to the Commission, dated January 8, in which he recited in greater detail the alleged criminal conduct engaged in by Parness together with the evidence available to the Commission should the case be reopened. In addition, the Commission was informed that any prosecution of Parness was impossible since he had been given immunity.

Solely as a result of the second Costello letter the Commission decided, on January 10, that the allegations lodged against Mr. Parness warranted a full hearing to determine whether the grant of parole would be rescinded. Consequently, the Commission reopened Parness' case, pursuant to 28 C.F.R. § 2.28, and retarded his effective date of parole pending the outcome of the revocation hearing, pursuant to 28 C.F.R. § 2.34.

As previously mentioned, Parness attempted to enjoin the retardation of his effective date of parole. However, I found that "[t]he Commission [had] met the statutory requirements, if only minimally, and the [retardation was] proper." Plaintiff filed an appeal in the Second Circuit.

The decision to retard Parness' release date was that of Joseph Nardoza, Regional Parole Commissioner, made pursuant to the authority granted him under 28 C.F.R.

§ 2.34. At that point, Commissioner Nardoza had two options open to him. First, he could have acted under 28 C.F.R. § 2.17 which provides, in pertinent part:

(a) A Regional Commissioner may designate certain cases for decision by a quorum of Commissioners as described below, as original jurisdiction cases. In such instances, he shall forward the case with his vote, and any additional comments he may deem germane, to the National Commissioners for decision. Decisions shall be based upon the concurrence of three votes with the appropriate Regional Commissioner and each National Commissioner having one vote.

. . . . .

(b) The following criteria will be used in designating cases as original jurisdiction cases:

(1) Prisoners who have committed serious crimes against the security of the Nation, e. g., espionage or aggravated subversive activity.

(2) Prisoners whose offense behavior: (i) Involved an unusual degree of sophistication or planning, or (ii) was part of a large scale criminal conspiracy or a continuing criminal enterprise.

(3) Prisoners who have received national or unusual attention because of the nature of the crime, arrest, trial, or prisoner status, or because of the community status of the offender or his victim.

The Commissioner was also able to refer the matter to a panel of designated hearing examiners as provided in 28 C.F.R. § 2.23. This section provides, in part:

(a) There is hereby delegated to hearing examiners the authority necessary to conduct hearings and make recommendations relative to the grant or denial of parole or reparole, revocation or reinstatement of parole or mandatory release, and conditions of parole. Hearings shall be conducted by a panel of two hearing examiners, except where specifically provided that a hearing may be conducted by a single hearing examiner or other official designated by the Regional Commissioner.

In the case at bar, Commissioner Nardoza decided to refer the matter to a § 2.23 hearing panel. The § 2.23 evidentiary hearing was held on January 29, 1980 after which the panel recommended that Parness' parole not be rescinded and he be released on March 19, 1980.

Under § 2.23 "[a] recommendation of a hearing examiner panel *shall* become an effective Commission decision upon review and docketing at the Regional Office, *unless action is initiated by the Regional Commissioner pursuant to § 2.24.*" (emphasis added).

The pertinent language of § 2.24 provides:

(a) A Regional Commissioner may review the recommendation of any examiner panel and refer this recommendation, prior to written notification to the prisoner, with his recommendation and vote to the National Commissioners for consideration and any action deemed appropriate.

. . . . .

(b) Notwithstanding the provisions of paragraph (a) of this section, a Regional Commissioner may:

(1) On the motion of the Administrative Hearing Examiner, modify or reverse the recommendation of a hearing examiner panel that is outside the guidelines to bring the decision closer to (or to) the nearer limit of the appropriate guideline range; or

(2) On his own motion, modify the recommendation of a hearing examiner panel to bring the decision to a date not to exceed six months from the date recommended by the examiner panel.

Despite the clear language of the regulations, Commissioner Nardoza, although agreeing with the panel's recommendation, decided to designate Parness' case as an original jurisdiction case and refer it to the National Commissioners for determination under § 2.17. In reaching this decision, nearly one month after the hearing panel's recommendation, Commissioner Nardoza reasoned that since the "[Parness case had] received unusual attention in that the re-scission hearing [had] examined allegations of criminal conduct involving corruption of public officials at the [MCC]," a § 2.17 designation was appropriate.

Needless to say, by referring Parness' case to the National Commissioner, Commissioner Nardoza retarded the March 19th release date pending their decision. This decision came on March 25th when the National Commissioners ruled to rescind Parness' release date of March 19th, and grant him an effective date of parole on July 11, 1980.

Plaintiff, presently incarcerated at the Federal Penitentiary in Lewisburg, Pennsylvania, now moves, under Fed.R.Civ.P. 65, to enjoin his continued incarceration. However, inasmuch as plaintiff seeks release from federal custody, his motion will be deemed as a petition for a writ of habeas corpus. 28 U.S.C. § 2241 *et seq.*

Defendants oppose the instant petition on two grounds. First, they argue that this Court lacks jurisdiction to entertain the petition. Second, they urge that in any event, the Commission's conduct was proper and its decision to rescind Parness' parole reasonable.

 Defendants' jurisdictional objection is actually two-pronged. The first concerns plaintiff's appeal from my decision of January 22, 1980. Generally, when a party files a notice of appeal, jurisdiction over the action is transferred to the Court of Appeals. Here, however, plaintiff has withdrawn his appeal from the Circuit Court. Accordingly, I do have jurisdiction to hear the instant petition.

Defendants' second jurisdictional objection is equally defective. They urge that since plaintiff is no longer incarcerated in New York, neither the Commission nor the Warden of the MCC is Parness' custodian within the meaning of 18 U.S.C. § 2242. Rather, the Warden of the Lewisburg facility is the proper defendant. I disagree.

 Generally, a District Court has jurisdiction to hear a habeas corpus petition only when it has jurisdiction over the petitioner's custodian. This rule, however, is

not without exceptions. *See, e. g., Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). Indeed, when, as in the case at bar, all the operative facts giving rise to the petition occurred while the plaintiff was in this jurisdiction and under the custodial authority of the Warden of the MCC, there can be no doubt that this Court has jurisdiction to hear the petition. To be sure, Commissioner Nardoza referred Parness' case to the § 2.23 hearing panel while he was incarcerated at the MCC. Moreover, the hearing was held and the recommendation rendered in the same building in which this Court sits.[1]

Finally, judicial economy and the ends of justice will be served best if I entertain the instant petition. First, I am familiar with the operative facts of this action having previously ruled on plaintiff's earlier attempt to enjoin the Commission. It certainly would be an unnecessary drain on the federal judiciary to direct plaintiff to a Pennsylvania forum, thereby requiring another federal judge to familiarize himself with the action, simply because the plaintiff has been fortuitously transferred from the MCC to the Lewisburg facility. More importantly, however, commencement of a Pennsylvania action would cost plaintiff precious time. Since he argues that his continued incarceration is unwarranted, a conclusion with which the hearing panel agreed, any further delay would be unconscionable.

■ Turning to the merits of the action, it is evident to me that by referring plaintiff's case to the National Commissioners, Commissioner Nardoza exceeded his authority.

There is no question that prior to referring plaintiff's case to a § 2.23 hearing panel, Commissioner Nardoza could have referred the case to the National Commissioner under § 2.17. However, having made the decision to refer the case for a § 2.23 evidentiary hearing, the panel's recommendation became an effective Commission decision absent action initiated by the Regional Commissioner pursuant to § 2.24.

Defendants concede, as they must, that Commissioner Nardoza did not initiate any action pursuant to § 2.24. Indeed, they admit that he was acting pursuant to § 2.17 in referring the matter to the National Commissioners. However, they do argue that § 2.17 somehow supersedes sections 2.23 and 2.24. In essence, they urge that regardless of the language in sections 2.23 and 2.24, section 2.17 may be invoked by the Regional Commissioner whenever deemed appropriate. I cannot sanction such strained logic. Nor will I strike out or render inoperative the clear language and intent of the commission's own regulations.[2]

The mandate of § 2.23 is clear. Absent action pursuant to § 2.24, the panel's recommendation is an effective Commission decision. There is no language in sections 2.23, 2.24 or 2.17 which even purports to have the overriding effect desired by defendants.

It is evident that Commissioner Nardoza, in agreement with the panel's recommendation, had no choice but to permit plaintiff to be released on parole on March 19th. Thus, referral to the National Commissioners under § 2.17 was unauthorized and their decision of March 25th, must be stricken as a nullity.

---

1. In addition, Commissioner Nardoza, who is alleged to have violated plaintiff's due process rights by referring his case to the National Commissioners, is the Regional Commissioner for the Northeast, which includes this District. Under these circumstances, it has been held that jurisdiction is obtained. *Pope v. Sigler,* 542 F.2d 460 (8th Cir. 1976) (per curiam).

2. Defendants also reason that since under § 2.24 Commissioner Nardoza could have unilaterally modified the panel's recommendation by retarding the plaintiff's release date for a period of up to six months. They reason that by referring plaintiff's case to the National Commissioners, Nardoza chose an alternative which was certainly less severe than those open to him under § 2.24. The argument is inapposite.

First, Nardoza agreed with the panel's recommendation. If he were to delay plaintiff's release date despite this agreement, this indeed would have been an abuse of his discretion. In addition, regardless of whether or not § 2.17 is the least restrictive alternative, the mandate of § 2.23 is clear. Only action by the Commissioner pursuant to § 2.24 is appropriate.

Accordingly, since the Commission exceeded its authority under the pertinent federal regulations the writ of habeas corpus shall issue and the Commission is directed to effect plaintiff's release on parole with all deliberate speed.

IT IS SO ORDERED.