**Andres TURCIOS–GALAN, Petitioner,**

v.

**David N. ILCHERT, District Director of the Immigration and Naturalization Service, Respondent.**

**No. C–86–0849 RFP.**

United States District Court,
N.D. California.

March 11, 1986.

Michael A. Mullery, San Francisco, Cal., for petitioner.

Larry Gallagher, Asst. U.S. Atty., San Francisco, Cal., for respondent.

### MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

### INTRODUCTION

Petitioner Turcios-Galan filed this action on February 21, 1986. Petitioner seeks a stay of his deportation to El Salvador pending the immigration judge's decision on his motion to reopen, which he filed in written form on February 26, 1986. He requests that the stay of deportation extend through any appeal of the immigration judge's decision to the Board of Immigration Appeals ("BIA"). The court held a hearing on this matter on March 3, 1986. The court denies petitioner's request.

### FACTS

Petitioner is a native and citizen of El Salvador. In October 1980, petitioner left El Salvador for the United States, entering this country without inspection. Petitioner states that he may suffer serious harm upon returning to El Salvador.

The following facts appear in petitioner's papers. Petitioner had served in the Salvadoran Air Force, paratrooper division. In December 1979, after returning home from military duty, he found a note on his doorstep that read: "Leave now that you have time. We give you three months." In January 1980, petitioner claims that he received another anonymous note, which read: "You do not want to obey. You will not have time to be sorry."

One week later, on January 12, 1980, Turcios was stopped by a group of young men. They beat him severely and he lapsed into unconciousness. His wife found him lying in a street, unable to move. Petitioner states that it took him three months to recover from the effects of the beatings. While petitioner was recovering, the men that beat him came to his house and shouted profane words at him and threatened his life.

During the early part of 1980, petitioner states that he noticed that former members of the Salvadoran Air Force, with whom he had served, were dying violent deaths at the hands of unknown men. Petitioner believed then, as he does now, that these individuals (six in all) were killed in retaliation for their service in the Salvadoran military. Petitioner moved to another house in 1980 and left El Salvador for the United States on October 22, 1980.

Petitioner fears attacks from members of both sides in the El Salvador conflict. According to petitioner, members of various revolutionary groups consider him an enemy because of his service in the Salvadoran military. He also fears that the government will take action against him because he refused to reenter the military, as the government requested.

When the INS apprehended petitioner, he asked to apply for asylum. Petitioner posted a $1500 bond, and was released. Petitioner appeared at a Master Calendar Hearing on July 9, 1984, and reiterated his re-

quest to apply for asylum. The immigration court gave petitioner until July 20, 1984, to file his application for asylum; petitioner timely filed his application. The court also set hearing on petitioner's application for May 7, 1985.

At the July 20, 1984, hearing, petitioner was represented by his current counsel, Michael Mullery. Mullery, who represented petitioner on a pro bono basis, was then director of the United States Catholic Conference local office. Petitioner told Mullery that he would need legal assistance to file his application for asylum. On Mullery's advice, petitioner contacted the Catholic Conference; Patricia Keiser, an accredited representative of the U.S. Catholic Conference assisted petitioner.

Until December 1984, petitioner lived at 1554 Howard St., in San Francisco. At that time, petitioner had to move to permit the building to be renovated. Petitioner claims that he notified Keiser of the change in his address, and requested that she send all correspondence regarding his immigration case to his mother-in-law's address, on Howth St. Petitioner asserts that he gave Keiser this address because he believed that some of the mail sent to his former address had been stolen or lost. The Catholic Conference's file on petitioner did not incorporate his change of address. In addition, counsel for petitioner represented at the March 3, 1986, hearing that Keiser has no recollection of being told of petitioner's change of address. A letter from Keiser to the INS sent January 31, 1986, states that the Catholic Conference had been unable to locate petitioner since the middle of 1985.

Petitioner did not appear at his May 1985 hearing to present his claim for asylum. In his absence, the immigration judge gave him two months voluntary departure. Petitioner did not, however, leave the country. On January 17, 1986, the INS sent a notice of deportation to petitioner's Howard St. address. The notice required petitioner to appear for deportation on February 3, 1986. The Catholic Conference unsuccessfully attempted to contact petitioner to notify him of the INS order.

The INS apprehended petitioner on February 10, 1986, and scheduled his deportation for Friday, February 21. On that date, petitioner finally contacted Mullery, who had represented him at his July 1984 hearing. As Mullery was interviewing petitioner, the INS removed petitioner and placed him on a plane bound for El Salvador, with a stop in Los Angeles. Mullery immediately requested a stay of deportation from the District Director of the INS, which was denied. Counsel then requested an emergency stay from the immigration judge, and made an oral motion to reopen petitioner's deportation proceedings. The immigration judge denied the request. At 5:20 in the afternoon, counsel requested, and Judge Schnacke granted, an ex parte temporary restraining order to prevent the INS from deporting petitioner. On February 26, petitioner filed his formal, written motion to reopen.

## DISCUSSION

■ Initially, the court finds that it has jurisdiction over this matter. In the last sentence of its last footnote, the government claims that the court does not have jurisdiction over this action. The government cites no authority in support of its argument; indeed, the government openly acknowleges the contrary authority of *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). That case rejected an "inflexible jurisdictional rule, dictating the choice of an inconvenient forum." *Id.* at 500, 93 S.Ct. at 1132. All the events relevant to the present case occurred in this district. The challenge on jurisdictional grounds arises only because the INS removed petitioner from its detention facility in this district while his lawyer was interviewing him. It would be unrealistic in this case to require counsel to have shadowed the plane bearing petitioner so that he could have brought this action in a different district. The court, therefore, turns to the merits of petitioner's claim.

■ The Immigration and Nationality Act provides for direct and exclusive re-

view by the courts of appeals of "all final orders of deportation ... made against aliens ... pursuant to administrative proceedings under section 1252(b)." 8 U.S.C. § 1105a(a). A denial of a stay of deportation is not a final order of deportation and thus not directly appealable to the court of appeals. *Kwok v. INS*, 392 U.S. 206, 215–17, 88 S.Ct. 1970, 1975–76, 20 L.Ed.2d 1037 (1968). Petitioner has styled his motion as a request for injunctive relief, though the statute provides that a habeas corpus proceeding is the proper method for raising the denial of discretionary relief, such as a stay. *See, e.g., Maldonado de Vasquez v. Ilchert*, 614 F.Supp. 538, 539 (N.D.Cal. 1985). *See also* 8 U.S.C. § 1105a(a)(9) ("any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings"). Regardless of the title of the proceeding, however, the court employs the same standard of review, as implicitly conceded by the parties. *See* Memorandum of Points and Authorities in Support of Complaint for Injunctive and Declaratory Relief in the Nature of Mandamus at ¶ 20; Government Opposition to Injunctive Relief at 7–9.

█ Either an immigration judge or the district director of the INS may issue a stay of deportation pending a ruling on an alien's motion to reopen deportation proceedings. *See, e.g., Maldonado de Vasquez*, 614 F.Supp. at 539. Simply filing a motion to reopen does not automatically stay deportation. 8 C.F.R. §§ 242.22, 3.8(a). In all circumstances, a stay of deportation is a matter of grace, not of right. *See, e.g., Bothyo v. Moyer*, 772 F.2d 353, 356 (7th Cir.1985).

█ District court review of a discretionary denial of a stay is narrow. The court can grant a stay only if it finds that denial of the stay was an abuse of discretion. *See, e.g., Siu Fung Luk v. Rosenberg*, 409 F.2d 555, 559 (9th Cir.), *cert. dismissed*, 396 U.S. 801, 89 S.Ct. 2151, 24 L.Ed.2d 38 (1969). The denial of discretionary relief must specify its reasoning. 8 C.F.R. §§ 243.4, 103.3; *see also Wang v. INS*, 622 F.2d 1341, 1349 (to review decision adequately, Board must specify its reasons).

█ The district director and the immigration judge did not abuse their discretion by denying petitioner a stay. Both issued written denials that fully addressed petitioner's claims for a stay. Petitioner had claimed that he merited a stay to reopen his deportation proceedings. He argued that he did not appear at his scheduled May 1985 hearing because he never received notice of the hearing. As the denials of his request for stay point out, petitioner received actual notice of his hearing: The immigration judge at petitioner's July 1984 hearing, at which petitioner was represented by counsel, stated that the hearing on petitioner's application for asylum would take place on May 7, 1985. Petitioner also failed to contact the INS to inquire about his hearing or to notify the INS of his change of address, as required by law. *See* 8 U.S.C. § 1305(a). A willful violation of this section can result in deportation or criminal penalties. 8 U.S.C. § 1306.

Therefore, under the circumstances of this case, the court finds no abuse of discretion in denying petitioner a stay to reopen his deportation proceedings. Accordingly, the court denies petitioner's request and vacates the order staying his deportation.

IT IS SO ORDERED.