Lee Mansell **GILSTRAP**, Sr.

v.

**His Excellency, Mills GODWIN,
Governor of Virginia.**

No. CA 74–0408–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 25, 1974.

Thomas S. Hatz, Thomas Lee Barney, Richmond, Va., Theodore S. Worozbyt, Atlanta, Ga., for plaintiff.

Robert E. Shepherd, Jr., Asst. Atty. Gen., Richmond, Va., for defendant.

WARRINER, District Judge.

This matter comes before the Court on a motion to stay the Governor of Virginia with respect to extradition proceedings involving Lee Mansell Gilstrap, Sr., a state prisoner in Georgia. The stay is incidental to a petition for a writ of habeas corpus naming the Governor of the Commonwealth of Virginia as respondent.

The Court finds on the strength of the evidence presented, which the Court must observe is not particularly strong evidence because it consists primarily of ex parte affidavits, that the petitioner was indicted in November 1972, by a grand jury of the Circuit Court of the City of Chesapeake, Virginia; that at the time of his indictment in Virginia the defendant was physically in the State of Georgia, where he was also under indictment for crimes related to that for which he was indicted in Virginia. The Virginia indictment charged a conspiracy to distribute barbiturates and amphetamines.

With reasonable promptitude after the true bill was handed down, the Commonwealth issued proper process to obtain the body of the petitioner from the State of Georgia in January of 1973. The State of Georgia, with reasonable promptness, forwarded the proper process in response to the process from Virginia. Prior to the issuing of the process in Virginia the petitioner had been convicted in a Georgia court in December of 1972, and had been sentenced to a term in prison in Georgia; and that term was presumed to be eight years. However, subsequent proceedings in Georgia reduced the actual time to be served to two years, and that two years is about up.

When the Georgia Governor's office issued the follow-up responsive warrant upon receipt of the process from Virginia, the process from the office of the Governor of Georgia was forwarded to the District Attorney in the county where the proceedings had been had against the petitioner.

The District Attorney returned all the papers, that is the Georgia papers, as well as the Virginia papers, to the office of the Governor of Georgia, stating that the petitioner was in prison and, therefore, he, the District Attorney, presumably and impliedly could take no action to comply with the process.

The office of the Governor of Georgia notified the appropriate officer in Virginia, being the Secretary of the Commonwealth, that the defendant was in prison in Georgia. This notice was given to the Secretary of the Commonwealth by letter dated 29 January 1973. This notice from the office of the Governor of Georgia to the Secretary of the Commonwealth of Virginia suggested, or certainly called to the Virginia official's attention, the fact that Virginia could then proceed under the Uniform Interstate Detainer Act if Virginia wanted the defendant at that time.

There is no evidence that Virginia officials did anything in response to the letter of 29 January 1973. In May of 1973, four months later, Georgia notified Virginia that there were no further legal proceedings pending with respect to the petitioner. The letter implied that Virginia was free to proceed under the Detainer Act if Virginia intended to do so.

Counsel for petitioner has vouched for the record that the indictment was placed upon the trial docket of the Circuit Court of the City of Chesapeake after it had been returned by the grand jury, and appeared on the trial docket at each calling of the docket from November of 1972 up to and through the 11th of March 1974. At that time when the case was called on the docket the presiding Judge of the Circuit Court of Chesapeake City suggested to the Commonwealth Attorney that the indictment be placed on what was called the "inactive docket."

On the 17th of June 1974, the Commonwealth Attorney of the City of Chesapeake took action to initiate proceedings under the Detainer Act, and in July

of 1974 express notice was given to the petitioner of the pendency of the Virginia indictment. The fact that I find express notice was given to the petitioner of the pendency of the Virginia indictment in July of 1974, is not a finding that notice had not been previously given to the petitioner. In fact petitioner's lawyer in Georgia had mentioned the Virginia indictment to petitioner at the time of his trial in Georgia in December, 1972.

When the defendant received notice in July, 1974, he apparently retained counsel, or counsel may have been appointed for him. In any event, he then became represented by Mr. Worozbyt of the Georgia bar. Mr. Worozbyt vouches for the record that in July of 1974 he filed a motion which he deemed to be appropriate, in the Circuit Court of the City of Chesapeake, asking for relief. That petition is not before the Court, and the exact nature of the relief is not before the Court. But the purpose of the petition was to have the Circuit Court of the City of Chesapeake adjudicate the question of whether or not the defendant should have the indictment against him dismissed because he had not been afforded a speedy trial.

The charge against the defendant is conspiracy to sell amphetamines and barbiturates in Virginia, and the Court is not advised, and there is no evidence before the Court, as to whether or not that is a charge difficult to prove or a charge easy to prove. The Court is not advised, and there was no evidence before the Court, as to whether or not delay necessarily makes the defense or the prosecution of the charge more onerous. However, the Court recognizes that where an indictment was returned in November of 1972, and a trial has not taken place twenty-three months later, that is September of 1974, prejudice can be presumed, and the Court does presume prejudice because of that delay.

The Court, on the basis of an ex parte affidavit, accepts the facts that the petitioner is sixty years old, and that he has already lost the possibility of a concurrent sentence. The Court accepts the fact that there is, as a matter of law, a strong burden on the Commonwealth to show that there is no prejudice in this case, to show that there has been a waiver, if they claim a waiver exists, and to excuse, if excuse there can be, the Commonwealth's failure to take bona fide good faith action to bring the defendant back to Virginia and have him face trial promptly.

Recognizing all of the foregoing, the Court nevertheless refuses to grant a motion for a stay in this matter, for several reasons. One is that the recitation of facts above are not, in the Court's opinion, a recitation of facts which show an exhaustion of state remedy. In this connection see Kane v. Commonwealth of Virginia, 419 F.2d 1369 (4th Cir. 1970), where the Court recited extensive activity on the part of the petitioner Kane to exhaust state remedies, including an application for relief from the Governor of Virginia.

The Court notes that the respondent in this case is the Governor of Virginia, and yet there is no evidence in the record that the petitioner has made any effort of any nature to obtain the relief from the Governor of the Commonwealth of Virginia which he asks this Court to grant. At the least exhaustion of remedies ought to require that the petitioner attempt to do for himself that which he asks the Court to do for him. In response to a question from the bench, counsel for petitioner stated very candidly that no attempt had been made to obtain the relief sought from the respondent Governor of Virginia.

A second reason for not granting the stay is that the stay in effect interrupts the orderly process of the criminal justice proceedings of the Commonwealth.

In Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 491–493, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), the majority opinion by Mr. Justice Brennan called particular attention to the fact that the petitioner in that

case, Braden, was not in any way asking the federal courts to interrupt, to abort, or to interfere with the orderly processes of justice in the state courts. I quote from page 491, 93 S.Ct. page 1128:

> Moreover, petitioner made no effort to abort a state proceeding or to disrupt the orderly functioning of state judicial processes. He comes to a federal court, not in an effort to forestall a state prosecution, but to enforce the Commonwealth's obligation to provide him with a state court forum.

On page 493, 93 S.Ct. page 1129 I quote further:

> We emphasize that nothing we have said would permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court.

It is true, and the Court does find, that on the 11th of September, 1974, petitioner, through his counsel, appeared before the Circuit Court of the City of Chesapeake for the purpose of having the Circuit Court of the City of Chesapeake rule on the question of dismissing the indictment because defendant had been denied a speedy trial. A transcript of this hearing has been accepted into evidence as Petitioner's Exhibit 1, and the Court's reading of the transcript as a whole convinces the Court that the Circuit Court of the City of Chesapeake did not have before it a proper and full evidentiary record upon which it could make a determination as to the petitioner's rights under the Sixth Amendment to the Constitution. The state court judge could well have held, on the record as the Court reads it, that a prima facie case had not been made by petitioner Gilstrap, and thus no burden was then and there placed upon the Commonwealth to excuse and explain the extensive delay.

The Court is mindful of the cases cited to the Court by counsel for petitioner, which state that in effect the delay itself, absent any other evidence, places a burden upon the state to excuse the delay. This Court believes that the records in the several cases indicate that that was not what happened, that as a matter of fact the petitioners did present prima facie cases before any state was required to excuse the delay.

Accordingly, the Court believes that the defendant has not exhausted his state remedies even in the forum where he sought a state remedy, that is in the Circuit Court of the City of Chesapeake.

The Court believes that a proper presentation of all the evidence, including the testimony of the petitioner himself, will afford the Circuit Court of the City of Chesapeake an adequate and full opportunity to rule upon the question of petitioner's right to a speedy trial, and give the Court an opportunity to afford the petitioner whatever rights he may have under Amendment 6 of the Constitution.

There is no presumption that either the Governor of Virginia or the Circuit Court of the City of Chesapeake, when they have adequate opportunity to know the facts and the law, will deny this defendant his rights.

Accordingly, the Court will deny the stay, will docket the petition, and will continue the petition on the docket pending a decision on the merits after a full evidentiary hearing by the Circuit Court for the City of Chesapeake. If the petitioner still feels himself aggrieved after the judgment of the Circuit Court of the City of Chesapeake, then he can, by proper motion, bring the matter on, and a process will issue requiring the Commonwealth to show cause why a writ should not be issued.

The Court further notes that it is not yet the middle of the afternoon—and there is some action which the petitioner claims will take place in Georgia sometime tomorrow—but there is still sufficient time to contact the proper officials of the Commonwealth of Virginia, which I would suggest would be through the office of the Attorney General of Virginia, to present such facts as petitioner

has to the responsible offices of the Commonwealth of Virginia. And it may very well be that if petitioner has the case that petitioner believes should warrant the Court in issuing a stay to the Governor of the Commonwealth of Virginia, which would have the effect of also staying the hand of the Governor of the Commonwealth of Georgia, if he has such a case then it may very well be that he can convince the Attorney General of Virginia, or one of the Assistant Attorneys General of Virginia, who within ample time may be able to advise the Governor as to what the facts and the law are; the Governor would be guided accordingly.

However, the decision of the Court today is not dependent upon what the Governor may do with respect to any such action which petitioner may take but is instead dependent upon what results petitioner may receive in the Circuit Court of the City of Chesapeake, after the Circuit Court of the City of Chesapeake has had a full opportunity to be apprised of all of the facts and the law.