Dennis J. MEAKER

v.

James R. SCHLESINGER, Secretary
of Defense, et al.

Civ. No. 3–74–310.

United States District Court,
E. D. Tennessee, N. D.

Nov. 11, 1974.

Jerrold L. Becker, University of Tennessee, Knoxville, Tenn., for plaintiff.

Charles N. Stedman, Asst. U. S. Atty., Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This case is founded upon plaintiff Dennis J. Meaker's action seeking ha-

beas and declaratory and injunctive relief. The Court received argument on the action this day and, having studied the record and the law in this case, makes the following findings of fact and conclusions of law pursuant to Rule 52, F.R.C.P.

### Findings of Fact

1. In the Fall of 1970, when a freshman at the University of Tennessee, Knoxville, petitioner enrolled in the University's Air Force Reserve Officer's Training Corps (A.F.R.O.T.C.) program and was assigned to A.F.R.O.T.C. Detachment 800 in Knoxville pursuant to A.F.R.O.T.C.M. 45–1, A.F.R. 45–3 and A.F.R. 45–47.

2. On January 27, 1971, petitioner executed a "Deferment Agreement" (deferment from induction for military service), a "Statement of Understanding" (setting forth conditions under which petitioner could be discharged from the U.S.A.F.R. and conditions under which he could be ordered to active duty), and a "Category Agreement" (stating that as a cadet petitioner would accept a commission in the Air Force, if tendered). Petitioner's commission was to be tendered in June of 1974.

More specifically, the January 27, 1971 Statement of Understanding provided in part:

a. I will be assigned to the Obligated Reserve Section (ORS) of the Ready Reserve in the grade of *AB (E–1)* for a period of *Eight (8)* years. (Citations omitted)

\*　　\*　　\*　　\*　　\*　　\*

c. I will be discharged from the USAFR if I am discontinued from AFROTC membership for one of the following reasons:

(4) Individual request for release for justifiable reasons (*as determined by the Commandant, AFROTC*). (emphasis in original)

(5) Inaptitude or undesirable traits of character.

\*　　\*　　\*　　\*　　\*　　\*

d. I may be ordered to active duty in my enlisted grade for a period of *four (4)* years if I am discontinued from AFROTC membership for one of the following reasons:

\*　　\*　　\*　　\*　　\*　　\*

(3) Breach or anticipatory breach of the terms of the category agreement.

(4) Declining to accept a commission.

3. It is accepted by both parties that petitioner's conduct and performance as an A.F.R.O.T.C. cadet was exemplary in all respects. He performed above average in his ROTC-related studies and was the recipient of several leadership and academic awards, including Outstanding Staff Officer, the Reserve Officer Association's Award for academics and leadership, and designation as an A.F.R.O.T.C. Distinguished Air Force Cadet. Additionally, the record before the Court indicates that at no time during his association with the R.O.T.C. program at the University did plaintiff make derogatory remarks or reflect disrespect toward the Air Force or military personnel.

4. In the Fall of 1971 petitioner began his involvement with the Wesley Foundation, a Methodist Student Center on campus. Later, in the winter of 1972, petitioner became a resident at the Center until May of 1973, during which time he served on the Center's Board of Directors and in a general counseling capacity.

During his affiliation with the Center, petitioner continued to perform his R.O.T.C. obligations and received the awards noted above.

5. Although petitioner had participated to some degree in organized religion prior to his association with the Methodist Center, due to this association petitioner was faced with a progressively increasing irreconcilability between his religious and moral beliefs and his participation in the R.O.T.C. program at the University. Petitioner's irreconcilability crystallized into a faint resolu-

tion that he was opposed to all wars and all forms of killing around February 1974.

6. By letter submitted to Colonel Kuchta, U.S.A.F., PAS Det 800, on March 14, 1974, petitioner advised that "[t]his letter is sent *to notify you of my intention to apply for a discharge from the USAFR as a conscientious objector. I base my request on the belief that there is a living God who created all life on earth; that in the eyes of this God, no one human life has more absolute value than another human life; and that it is therefore morally unjustifiable for any human being to take the life of another, under any circumstances.*" (emphasis added) Petitioner in his letter proceeded to set forth in detail the background of his beliefs and their philosophical and religious origins.

7. By response, Colonel Kuchta informed petitioner that "I have designated Captain William C. Shearer, 158–32–3243 as investigating officer to conduct an investigation and to make recommendations concerning your possible disenrollment from the Air Force ROTC program. The investigating officer will investigate the following specific matters: Claim to conscientious objector status."

8. A hearing was conducted by Captain Shearer on April 5, 1974, pursuant to AFROTCM 45–1 and AFR 45–48.[1] At that time, petitioner again traced the origin and basis for his claim to be a conscientious objector. During the hearing, Meaker stated that:

1. he could not serve in the military in non-combatant fashion.

2. he could not participate in any war effort at all, regardless of the war.

3. he realized he could be ordered into active service and ultimately become the object of penal sanctions.

Additionally, petitioner called three witnesses to testify in behalf of his position: Mrs. Carol Nickle, wife of one of the ministers at the Wesley Foundation; Mr. Nickle, a minister at the Wesley Foundation; Mr. Robert Parrot, also a minister at the Wesley Foundation. Each witness testified that he had known petitioner for an extensive period of time and in essence corroborated the sincerity and conviction of his beliefs.

Finally, petitioner was advised of the following:

". . . O.K. I have to advise you at this time that the investigation will proceed—O.K. that no evaluation of your claim as a conscientious objector will be made during the investigation. Although your claim will be considered in making a recommendation. In other words, I can't make a determination as to the legality or validity of your claim as a conscientious objector. I can include all these statements. I can include all the testimony that has been given this morning, and I can consider all that in making my recommendation. All that I'm doing here is making a recommendation for disenrollment or for retention in the program. Do you understand that?

"Yes, I do.

"O. K. I need to advise you that if you're disenrolled from Air Force R. O.T.C., regardless of the authority cited, no evaluation of your claim to the conscientious objector status will be made. Should you be recommended for possible call to active duty, if disenrolled under paragraph 8485, you can pursue your claim with A.R.P.C., that's Air Reserve Personnel Center. In other words, once I make the recommendation and the progressive aerospace studies signs it and it's for-

---

1. At this point, a distinction should be drawn between AFROTCM 45–1, AFR 45–48, and AFR 35–24. AFROTCM 45–1 describes the procedure for disenrollment proceedings, that is, disenrolling or discontinuing a cadet from the R.O.T.C. program. AFR 45–48, Section E, sets forth the grounds for disenrollment. AFR 35–24, promulgated pursuant to DOD Directive 1300.6, captioned "Disposition of Conscientious Objectors" details the substantive and procedural requirements for obtaining a discharge from the Air Force because of a claimed conscientious objector status. AFR 35–24 is currently found at 32 C.F.R. § 888e and "Enlistment and Discharge of AFROTC Cadets" is found at 888d.

warded to Maxwell, it's then out of our hands, and if Maxwell decides for disenrollment and Air Reserve Personnel Center will then have the task of deciding whether or not to call you to active duty. And you can pursue your claim with them.

"Then if they decide to call him to active duty, at that time can he put forth his claim for conscientious objector?

"Certainly, yes.

"So there will then be a secondary hearing, or at least some sort of review.

"Yeah. I'm not that familiar with the process involved but yes. He can pursue his claim with A.R.P.C. It could be a lengthy process. I really don't have any idea as to just how long it would take. And they're the people who would make the determination as to whether to call you to active duty or not."

Petitioner was then asked if he would accept a commission in the Air Force if one were tendered him at the completion of his undergraduate studies. He answered No.

Supplementing the hearing were the statements from various persons, both inside and outside the religious community, generally attesting to the sincerity and tenacity of petitioner's convictions.

9. On April 22, Shearer submitted his report as the investigating officer and made the following findings:

"a.   .   .   .

"b. That Cadet Meaker has stated that he will not accept a commission in the United States Air Force thereby demonstrating failure to maintain acceptable retention standards under prescribed competitive criteria, paragraph 8-4a(3), AFROTCM 45-1, and paragraph 36a(3), AFR 45-48.

"c. That Cadet Meaker's beliefs are not compatible with his continued membership in AFROTC."

10. On April 25, Colonel Kuchta concurred in the findings of Shearer.

11. Subsequently, Colonel Elbert L. Kidd, Vice Commandant, in reviewing the action of Colonel Kuchta, stated that "[t]he recommendation that Cadet Meaker be disenrolled for failure to maintain acceptable retention standards is disapproved. His negative statement of intent places him in anticipatory breach of his Category Agreement. Cadet Meaker is disenrolled under the authority of AFR 45-48, para 36a(5), and AFROTCM 45-1 para 8-4a(5)."

12. On August 29, 1974, petitioner was notified by the Headquarters Air Reserve Personnel Center that as a consequence of his discontinuance from the ROTC program he was to report to Lackland Air Force Base, San Antonio, Texas, for two years of active duty.

13. The Court understands that petitioner has offered to enlist in VISTA as an alternative service, and has offered to reimburse the Air Force for scholarship funds advanced to him during his enrollment in the ROTC program.

*Conclusions of Law*

■■ 1. Under the circumstances of this case, it appears that the Court's habeas corpus jurisdiction may be properly invoked. 28 U.S.C. § 2241. Thus, it is generally accepted that a habeas corpus petition may be used to obtain judicial review of a military denial of an in service discharge predicated upon a conscientious objector claim. McDonough v. United States, 452 F.2d 1075 (1st Cir. 1971); *see generally* 10 A.L.R.Fed. § 6, at 59, and cases cited therein.

■ 2. Although the Court realizes that there may exist some question over the habeas jurisdiction of the Court, since the Commander of the University's AFROTC program may have ceased to have custody over petitioner on June 13, 1974, it is for this reason that the Court grants petitioner's motion for declaratory relief to supplement the Court's ha-

beas jurisdiction.[2] This motion, however, will not be interpreted as substituting declaratory for habeas relief.

■ 3. However, whether captioned habeas corpus relief or declaratory relief, the Court is of the opinion that petitioner has failed to exhaust his administrative remedies.[3] The question at this stage is not whether petitioner must resort to a board of correction of military records or whether he must await denial of conscientious objector status in court-martial proceedings. Rather, more accurately, it appears that petitioner has failed to invoke his remedies under AFR 35–24, 32 C.F.R. §§ 888e, 888e.60. In this regard, the Court cannot adopt petitioner's contention that the effect of the disenrollment hearing should be to grant petitioner a discharge under the Air Force Conscientious Objector Procedure. AFR 35–24. The procedures for disenrollment are significantly different from the procedures for obtaining a conscientious objector discharge. *Compare* AFROTCM 45–1, Chapter 8 "Disenrollment," *with* 32 C. F.R. § 888e et seq. "Disposition of Conscientious Objectors." The Court cannot say that a disenrollment proceeding is tantamount to a conscientious objector hearing. Nevertheless, the fact remains that petitioner wrote his unit commander approximately nine months ago, on March 13, 1974, and stated that "[t]his letter is sent to notify you of my intention to apply for a discharge from the U.S.A.F.R. as a conscientious objector." It appears that if petitioner at the time had been a member of the inactive reserves and not a member of the AFROTC he would have been advised of 32 C.F.R. 888e.60 and directed to follow that procedure in petitioning the Air

Reserve Personnel Center in Denver, Colorado. Instead, he found himself disenrolled and ordered to active duty.

■ 4. Although the Court at this time cannot pass on the merits of petitioner's claim, it does conclude that, under the limited facts of this case, an interlocutory order may be entered at this time staying the Air Force's order that petitioner report for active duty. The traditional requirements that must be met before a Court can grant such exceptional relief were set forth in Craycroft v. Ferrall, 408 F.2d 587, 598 (9th Cir. 1969):

> "(1) likelihood that the subject person would prevail on the merits of an appeal from the administrative process to the court;
>
> "(2) irreparable damage to the subject person if a stay is not ordered;
>
> "(3) no irreparable damage to the other parties or the public from a stay order."

The Court is satisfied that here petitioner has satisfied this admittedly rigorous test. Initially, without passing on the merits of petitioner's claim or wishing in no way to prejudice a subsequent determination before the proper military authorities, the Court is mindful of the substantive test set forth by the Air Force in determining whether to grant a conscientious objector discharge.

> "(a) Consistent with the national policy to recognize the claims of bona fide conscientious objectors in the military service, an application for classification as a conscientious objector may be approved . . . for any individual,

---

2. See generally, McDonough v. United States, 452 F.2d 1075 (1st Cir. 1971) ; Berman v. Resor, 302 F.Supp. 1200 (N.D.Calif.1969) (petitioner, where none of respondents within territorial jurisdiction, permitted to seek declaratory relief) ; Braden v. 30th Judicial Circuit Court of Kentucky, 454 F.2d 145, 147 n. 1 (1972), rev'd on other grounds, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443

(1973) ; J. Moore, Moore's Federal Practice § 57.08[3], at 57–43, n. 9 (1973).

3. See generally Noyd v. McNamara, 378 F.2d 538, (10th Cir.) cert. den. 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967) ; Hammond v. Lenfrest, 398 F.2d 705 (2d Cir. 1968) ; 10 A.L.R.Fed. 15, §§ 9, 10 and cases cited therein.

"(1) who is conscientiously opposed to participation in war in any form;

"(2) whose opposition, is founded on religious training and belief; and

"(3) whose position is sincere and deeply held." 32 C.F.R. § 888e.10(a)

In view of the nature of his claim, petitioner's assumption of active duty represents a sufficient risk of irreparable harm. To report to active duty would require petitioner to submit himself to military orders, training and discipline, which are antagonistic to his religious beliefs. Finally, and perhaps most importantly, it does not appear that, in light of the present peace-time conditions, other parties or the public will suffer irreparable damage from a stay order. This is not the situation where a replacement will have to assume combatant duty in petitioner's place. Indeed, the relief ordered in this instance by the Court is substantially similar to that relief the Air Force itself recognizes as being appropriate:

"32 C.F.R. 888e.72

"The reporting date of applicants ordered to extended active duty will be amended to allow receipt of the decision by AFMPC, provided the applicant has furnished ARPC/DPAAD all the information required under this part prior to the effective date of his active duty order . . ."

Accordingly, the Court is satisfied that under the circumstances of this case a stay order is proper.

5. The Court is mindful and respectful of the traditional reluctance on the part of the judiciary to thrust itself into the internal affairs of the military community. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). It is the legitimate concern of the military to dispose of conscientious objector applications in the manner that it prescribes. However, under the facts of this case, it is the opinion of the Court that petitioner is entitled to an expeditious processing of his application prior to his reporting to active duty. This is particularly apparent to the Court in light of petitioner's March 13 request for discharge.

Accordingly, it is ordered that petitioner within three days of the date of this order set in motion those procedures necessary under 32 C.F.R. § 888.-60. Petitioner's orders to report to active duty will be stayed pending a final determination of petitioner's claim.