Carlos Alberto MELO, Petitioner,

v.

John ASHCROFT, as United States Attorney General, and Denis Riordan, as District Director, Bureau of Immigration and Customs Enforcement, Respondents.

No. C.A.04–66S.

United States District Court,
D. Rhode Island.

April 12, 2005.

Roberto Gonzalez, Esq., Odette, Bazar & Gonzales, Inc., East Providence, RI, for Petitioner.

Dulce Donovan, Esq., U.S. Attorney's Office, Providence, RI, for Respondents.

*Decision and Order*

SMITH, District Judge.

Before this Court is a Petition for Writ of Habeas Corpus and Complaint for De- claratory and Injunctive Relief, brought by Carlos Alberto Melo ("Melo"), a former legal resident alien now in removal pro- ceedings.[1] On July 25, 1994, the Immi- gration and Naturalization Service, the Department of Homeland Security's pre- decessor (the "Government"), charged Melo with being subject to deportation as a result of his conviction, in February 1994, of a drug offense to which he plead- ed guilty. He subsequently applied for and was denied discretionary relief from deportation, after the Board of Immigra- tion Appeals ("BIA") determined that he was not entitled to such relief on account of the changes contained in the Immigra- tion Act of 1990, known as "IMMACT", which bars relief to aggravated felons who have served at least five years in prison. The dispute at the heart of this case is this: in calculating IMMACT's five-year bar, the Government included time served by Melo on a separate drug offense to which he pleaded guilty prior to the enact- ment of IMMACT. Melo argues, among other things, that the Government may not use the time served on his pre-IM- MACT conviction in calculating the five- year bar under IMMACT. He claims that doing so gives IMMACT an "impermissi- ble retroactive effect." This Court con- cludes, however, that the Government's application of the five-year bar contained in IMMACT, while arguably retroactive, does not give IMMACT an "impermissible retroactive effect." The law in this Cir- cuit makes clear that the bar applies and is unaffected by the bifurcated nature of Melo's prison terms, or the fact that he pleaded guilty (as opposed to going to trial) in the 1994 case. Moreover, as will be explained in detail below, even if there were a question as to the application of the five-year bar, Melo should have been

---

1. "Removal is a new procedure created in 1996 through the fusion of two previously distinct expulsion proceedings, 'deportation' and 'exclusion.'" *Jama v. Immig'n and Cus-* *toms Enforc't,* —— U.S. ——, 125 S.Ct. 694, 704, 160 L.Ed.2d 708 (2005) (citing provision of Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")).

well aware of IMMACT, and the law of this Circuit holding that the bar on discretionary relief was retroactive, at the time he pleaded guilty in 1994. Accordingly, Melo's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief is denied, and the Government's Motion for Summary Judgment is granted.

## I. Background

This case involves a very lengthy and complicated procedural history, which it is necessary to detail in full in order to set the stage for consideration of Melo's arguments. Melo was admitted to the United States as a lawful permanent resident ("LPR") on August 25, 1973. On July 15, 1988, Melo entered a plea of nolo contendere in Rhode Island Superior Court to unlawful delivery of a controlled substance, and served a sentence of approximately three years. While the precise dates of his incarceration are in dispute, the record reveals that some time on or about July 5, 1988, Melo was taken into custody, and was released from custody on or about

August 5, 1991. (Tr. of Imm. Hr'g, 2/14/96, at 190–91.)[2] As a result of this conviction, on July 19, 1989, the Government served Melo with an Order to Show Cause and Notice of Hearing, charging him with being subject to deportation based on his conviction for a controlled substance offense.[3] Melo was subsequently found deportable as charged.

■ Before 1990, LPRs were eligible for humanitarian relief from an order of deportation, without regard to the type of offense committed or time served as a result of a conviction, pursuant to § 212(c) of the INA, 8 U.S.C. § 1182(c) (1994 ed.). At that time, INA § 212(c) provided that:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . . [4]

A request for relief under § 212(c) was made by applying for a waiver of "excludability."[5]

---

**2.** The precise dates of incarceration do not affect this Court's analysis, as it is clear that the Defendant served at least three years in prison on the 1988 conviction. (The import of this point is discussed in subsection "B" of this Decision and Order.)

**3.** The Government charged that Melo was subject to deportation pursuant to § 241(a)(11) of the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1251(a)(11) (1988 ed.), for the violation of R.I. Gen. Laws § 21–28–4.01(A)(2)(a) (1982 ed.). (Order to Show Cause and Not. of Hr'g, 7/18/89.)

**4.** The decision to grant this relief is wholly within the discretion of the Attorney General, and is based on "a balancing of equities, including the alien's length of residence here, especially if it began at a young age, her family ties, the hardship to the alien if deported, proof of rehabilitation, work history, military service to this country, ownership of a

business or property here, and any other evidence of her good character and value to the community and the nation." *Wallace v. Reno,* 24 F.Supp.2d 104, 106 (D.Mass.1998).

**5.** "Although [§ 212(c)] appears on its face to make relief available only to resident aliens facing 'exclusion' at the border upon return from trips abroad, it has long applied with equal force to lawful residents facing deportation." *Wallace,* 24 F.Supp.2d at 106; *see, e.g., Immig'n and Natural'n Serv. v. St. Cyr,* 533 U.S. 289, 295, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Goncalves v. Reno,* 144 F.3d 110, 114 (1st Cir.1998). As a result of IIRIRA, which changed the term "exclusion" to "inadmissibility" throughout the INA, § 212(c) waivers are now referred to as waivers of "inadmissibility." *See* Pub.L. No. 104–208, § 308(d), 110 Stat. 3009 (1996). "Despite the change in terminology, the terms 'exclusion' and 'inadmissibility' are functionally equivalent." 5 Charles Gordon et al., *Immigration Law and Procedure* § 63.01

On November 29, 1990, Congress enacted IMMACT, Pub.L. No. 101–649, 104 Stat. 4978 (1990), which amended § 212(c) by making discretionary relief unavailable for "an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years." IMMACT § 511(a). IMMACT provided that this prohibition on § 212(c) relief applied only "to admissions occurring after the date of the enactment of this Act." IMMACT § 511(b).[6]

After being found deportable by the Government, Melo was granted a waiver of inadmissibility by Order of the Immigration Judge on February 22, 1991, pursuant to § 212(c) of the INA. (Summary Oral Dec. Imm. J., 2/22/91.)

■ On December 4, 1993, Melo was again arrested, and on February 24, 1994, he entered a plea of nolo contendere to the offense of possession of cocaine with intent to distribute. (R.I.Super. Ct. J. of Conv'n and Commit't at 1.) He served a sentence of approximately two years for this crime.[7] As a result of this conviction, the Government filed with the Immigration Judge, on July 25, 1994, an Order to Show Cause and Notice of Hearing, charging Melo with being subject to deportation based on his conviction for a controlled substance violation and an aggravated felony.[8] (Order to Show Cause, 7/25/94.) At a hearing on August 21, 1995, Melo was found deportable as charged by the Immigration Judge. (Tr. of Imm. Hr'g, 8/21/95, at 15.) On September 24, 1995, he again applied for § 212(c) discretionary relief. (Resp't's Supp'l Mem. at 3.) In response, the Government moved to pretermit Melo's application based on two immigration statutes passed in 1996, the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") and IIRIRA, both of which further restricted the availability of relief under § 212(c).[9] On June 5, 1996, the Immigration Judge denied Melo's application for § 212(c) relief based on AEDPA and ordered him deported to Portugal. (Oral Dec. Imm. J., 6/5/96, at 4.)[10] Melo filed an appeal with the BIA on February 19, 1998, which was also denied. He then filed an appeal with the First Circuit Court of Ap-

(2004). For the sake of clarity, this Court will use the term "waiver of inadmissibility," as used by the Government and the BIA, to describe the relief sought by Melo pursuant to § 212(c).

**6.** On December 12, 1991, Congress further amended § 212(c) by enacting the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 ("TINA"), Pub.L. No. 102–232, 105 Stat. 1733 (1991), which made IMMACT's bar to § 212(c) relief applicable to an alien who had been convicted of "one or more aggravated felonies and has served for such felony or felonies" at least five years in prison. TINA § 306(a)(10).

**7.** While the precise dates of Melo's incarceration on his second conviction are also in dispute, the record reveals that Melo was taken into custody in December of 1993 (Criminal Face Sheet, 3/21/94) and was released from custody on or about January 7, 1996 (Tr. of Imm. Hr'g, 2/14/96, at 194).

**8.** The Government charged that Melo was subject to deportation pursuant to § 241(a)(2)(A)(iii) (alien convicted of an aggravated felony) and § 241(a)(2)(B)(i) (alien convicted of controlled substance violation) of the INA, 8 U.S.C. §§ 1251(a)(2)(A)(iii), 1251(a)(2)(B)(i) (1994 ed.), for the violation of R.I. Gen. Laws § 21–28–4.01(A)(2)(a) (1982 ed.). (Dec. Bd. Imm. Appeals, 12/10/03, at 1; Order to Show Cause and Notice of Hr'g, 7/25/94, at 1.)

**9.** The AEDPA eliminated § 212(c) relief for aggravated felons and drug offenders, irrespective of time served in prison. Pub.L. No. 104–132, § 440(d), 110 Stat. 1214 (1996). The IIRIRA repealed § 212(c) altogether in those cases in which removal proceedings were instituted on or after April 1, 1997. IIRIRA § 304(b).

**10.** The Immigration Judge did not reach the issue of whether IIRIRA also barred Melo's application for § 212(c) relief.

peals, which denied the appeal for lack of jurisdiction on March 16, 1998, without prejudice to Melo's reinstatement of his petition for judicial review, pending a decision by the First Circuit in *Goncalves.* (Order of Dist. Ct. Mass., C.A. No. 98–10858–EFH, 6/22/98, at 2.) The First Circuit subsequently held, in *Goncalves,* that the district court retained habeas jurisdiction over an alien's statutory interpretation claim, notwithstanding AEDPA and IIRIRA, and that AEDPA did not apply retroactively to bar the alien's pending application for § 212(c) relief. 144 F.3d at 133–34. In light of this decision, on May 8, 1998, Melo filed a Petition for Writ of Habeas Corpus with the United States District Court for the District of Massa-

chusetts (where his removal proceedings were held).[11] On June 22, 1998, the court, relying on the First's Circuit's holding in *Goncalves,* granted Melo's Petition on procedural grounds and remanded the case to the BIA for a hearing on the merits of Melo's application for § 212(c) relief—without regard to AEDPA.[12] (Pet'r's Supp'l Mem. at 2–3.) The BIA remanded the case to the Immigration Judge on July 23, 1999.

Slightly less than three years passed,[13] and on May 16, 2002, Melo filed a new application for § 212(c) relief with the Immigration Judge.[14] The Government moved to pretermit this application as well, contending, this time, that Melo was statutorily barred from such relief under IMMACT[15] because he had served a total of

11. The reader will note that Melo has brought habeas corpus petitions in both the federal district courts of Massachusetts and Rhode Island. While the Government does not contend that Melo's Petition fails for lack of personal jurisdiction or improper venue, this Court will briefly address these issues for the sake of completeness. "As a general rule, a petitioner should name as a respondent to his habeas corpus petition 'the individual having day-to-day control over the facility in which [the alien] is being detained.'" *Roman v. Ashcroft,* 340 F.3d 314, 319 (6th Cir.2003) (quoting *Vasquez v. Reno,* 233 F.3d 688, 696 (1st Cir.2000)). "[A]lthough the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners." *Id.* at 320. Because Defendant Denis Riordan is the District Director of the Bureau of Immigration and Customs Enforcement for the Boston District, "which includes jurisdiction over Rhode Island" (Pet.Hab.Corp.¶ 4), this Court has personal jurisdiction over him. In addition, because the crimes for which Melo was ordered deported were committed in Rhode Island, because Melo served his sentences for these crimes at the Rhode Island Adult Correctional Institute and is presently detained at the Donald W. Wyatt Detention Facility in Rhode Island, and because the Government has never claimed nor could it reasonably claim that Rhode Island is an inconvenient forum, the

Court finds venue in Rhode Island to be appropriate. *See Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 493–94, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (applying traditional principles of venue in habeas petition).

12. The Order of the District Court for the District of Massachusetts provides, in relevant part, that "the case is remanded to the [BIA] for a discretionary determination of the merits of petitioner's application for relief under the old [pre-AEDPA] Section 212(c) without regard to Section 440(d) of AEDPA. The Attorney General, through the [BIA], of course, still exercises her discretion to allow petitioner to avoid deportation."

13. The record is unclear as to the reason for this delay.

14. At oral argument, counsel for Melo explained that it is the Immigration Court's practice to require that remanded applications for discretionary relief be either renewed or updated. Counsel added that he believed that Melo's attorney in May 2002 (different from current counsel) "decided to submit a new application instead of the application that had been submitted previously." (Tr. of Hr'g, C.A. No. 04–66S, 6/17/04.)

15. In the wake of *Goncalves,* the Government apparently dropped not only its AEDPA claim against Melo, but also its like claim that IIRI-

five years in prison (between July 1988 and August 1991, and between December 1993 and January 1996) for two aggravated felony offenses.[16] At the merits hearing on June 19, 2002, the Immigration Judge granted Melo § 212(c) relief, finding that time served on a pre-IMMACT conviction, at least in Melo's case, should not be included in IMMACT's five-year bar. (Oral Dec. Imm. J., 6/19/02, at 2). On December 10, 2003, the BIA vacated the Immigration Judge's decision based, in part, on IMMACT's preclusion of § 212(c) eligibility for aggravated felons who have served more than five years in prison, and ordered Melo deportable. (Dec. Bd. Imm. Appeals, 12/10/03, at 2.) [17]

On February 27, 2004, three days before he was to be taken into custody, Melo filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief with this Court, alleging, among other things, that the conviction he received in 1988 as the result of a plea agreement to an aggravated felony offense, prior to the enactment of IMMACT on November 29, 1990, cannot be used in calculating IMMACT's five-year bar to § 212(c) relief, because doing so would have an impermissible retroactive effect.[18] Melo also alleges that the Government did not meet its burden of proving the actual time that he served in prison, and that his continued detention pending execution of the deportation order violates his substantive due process rights.[19]

RA retroactively precluded Melo from receiving § 212(c) relief.

16. Melo does not dispute that his 1988 and 1994 convictions constituted aggravated felony convictions within the meaning of IMMACT.

17. On January 6, 2004, Melo filed a Petition for Review with the First Circuit. On January 13, 2004, the First Circuit issued an Order to Show Cause why the appeal should not be dismissed, noting that while it lacked jurisdiction to review Melo's Petition for Review by reason of his having committed specified criminal offenses, the appropriate district court may have jurisdiction to review Melo's challenges under a petition for writ of habeas corpus. (Order of First Circuit Ct. Appeals, No. 04-1062, 1/13/04 (citing 8 U.S.C. § 1252(a)(2)(C) and IIRIRA § 309(c)(4)(G) for lack of jurisdiction).) Melo subsequently moved for voluntary dismissal, and on March 9, 2004, the First Circuit voluntarily dismissed the Petition pursuant to Fed. R.App. P. 42(b).

18. The writ of "habeas corpus ad subjiciendum" (or "habeas corpus" for short), which means "that you have the body to submit to" in Latin, is an ancient English writ used "to contest the legality of the detention of one in the custody of another." *Briggs v. Arthur*, No. Civ.A.1:01 CV 397, 2003 WL 23539588, at *5 (E.D.Tex. Sept.16, 2003). Although Melo was technically not "in custody" when he filed his

Petition, his filing is nevertheless proper because a "[p]etitioner need not wait until the marshals physically lay hands on him; he is entitled now to challenge the allegedly unlawful conditions of his imminent custody." *Roba v. U.S.*, 604 F.2d 215, 219 (2d Cir.1979); *see also Hensley v. Mun. Court*, 411 U.S. 345, 351–53, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). At the time of Melo's filing, Melo's brother was in receipt of the Government's "Notice to Obligor to Deliver Alien" for execution of the final order of deportation, which was scheduled to take place just three days later, on March 1, 2004. (Pet.Hab.Corp.¶ 9.) Under these circumstances, Melo's detainment was sufficiently "imminent" to support his filing the Petition.

19. In his Petition, Melo also alleged that IMMACT's application to "admissions occurring after the date of the enactment of this Act," IMMACT § 511(b), made the statute applicable only to aliens admitted into the country after IMMACT's enactment in 1990 (which does not include Melo). At oral argument on June 17, 2004, Melo conceded that the BIA's interpretation of the term "admissions" to include all applications for relief made after IMMACT's enactment (which includes Melo) was consistent with First Circuit precedent, and that he no longer intended to pursue this claim. *See Gomes v. Ashcroft*, 311 F.3d 43, 45–46 (1st Cir.2002) (holding that IMMACT's reference to "admissions" refers to aliens' efforts to seek admission through filing a petition for § 212(c) relief).

Melo was taken into custody on March 1, 2004. (Resp't's Supp'l Mem. at 5.) On March 2, 2004, this Court issued an Order directing the Government to file a response to the Petition on or before March 22, 2004. (Order of Dist. Ct. R.I., C.A. 04–66S, 3/2/04.) After receiving two brief extensions of time, on March 31, 2004, the Government filed a Motion to Dismiss the Petition, arguing that there was no impermissible retroactive effect in precluding Melo from seeking § 212(c) relief because Melo's second conviction took place well after the enactment of IMMACT, thereby making him ineligible for § 212(c) relief. On June 8, 2004, the Government filed a Motion of Intent to Execute Removal Order, and, on June 10, 2004, Melo filed a Renewed Motion for Stay of Removal.[20] One week later, on June 17, 2004, this Court conducted a hearing on Melo's Motion and subsequently granted the stay and directed the parties to file supplemental memoranda concerning the issues raised in the petition and the Government's Motion to Dismiss, which they did.

## II. *Standard of Review*

■ Summary judgment[21] is appropriate when there are no genuine issues of material fact, and the moving party is enti-

tled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In considering the motion, the court must "view all facts and draw all inferences in the light most favorable to the nonmoving party." *Reich v. John Alden Life Ins. Co.,* 126 F.3d 1, 6 (1st Cir. 1997) (citing *Continental Cas. Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991)).

## III. *Discussion*

### A. *Retroactivity of IMMACT*

1. *Is application of IMMACT's preclusion of § 212(c) relief prospective in this case?*

■ The Government appears to argue, in the first instance, that IMMACT is being applied prospectively to Melo, because it is not Melo's 1988 conviction but rather his second conviction in 1994—which took place well after the passage of IMMACT in 1990—and the resulting sentence that "cumulatively preclude[s] him from § 212(c) relief." (Resp't's Supp'l Mem. at 10.) While it is true that Melo's second conviction occurred after the enactment of IMMACT, and that the application of IMMACT is therefore not retroactive as to that conviction, IMMACT's bar on

---

**20.** Melo's initial Motion for Stay of Removal was filed with his Petition, on February 27, 2004.

**21.** While the Government captioned its motion a "Motion to Dismiss," this Court treats this Motion as a Motion for Summary Judgment, based on Rule 4 of the "Rules Governing Section 2254 Cases in the United States District Courts" ("the Habeas Rules"). *See* Rules Governing § 2254 Cases, Rule 1, 28 U.S.C. foll. § 2254, advisory committee's note (stating that habeas corpus rules governing § 2254 cases are not limited to persons in custody pursuant to state court judgments, but rather may be applied in other contexts—such as deportation habeas corpus cases—in the court's discretion); *see also* Larry W. Yackle, Postconviction Remedies § 111

(2003). Under Rule 4 of the Habeas Rules, the court is required to "promptly examine" each habeas corpus petition and determine whether it should be dismissed before the respondent is required to file a response to the petition. Where, as here, the Court has not dismissed the Petition, the Government's motion may appropriately be considered as a motion for summary judgment. *See Turgeon v. Cunningham,* No. CIV. 93–101–B, 1994 WL 258758, at *7 n. 2 (D.N.H. May 5, 1994) (stating that if, after answering habeas petition, respondent contends that it is entitled to judgment as a matter of law, respondent should file motion for summary judgment, not motion to dismiss); *see also* Fed.R.Civ.P. 56 (permitting motion to dismiss to be treated as motion for summary judgment upon introduction of extraneous matter).

§ 212(c) relief requires both a conviction and five years of imprisonment. The 1994 conviction and time served on that conviction alone, therefore, do not suffice. Additional time served is required under IMMACT, for which the Government relies on Melo's 1988 conviction. Because application of IMMACT to preclude access to § 212(c) relief depends on the aggregation of Melo's sentence from his 1988 conviction—which took place before the enactment of IMMACT—with his post-IMMACT 1994 conviction, the Government's contention that IMMACT's preclusion of § 212(c) relief is prospective is not persuasive.[22] *See Gomes,* 311 F.3d at 45 n. 2 (concluding that IMMACT was not applied retroactively where petitioner's conviction and time served took place after IMMACT's enactment). A retroactivity analysis is thus required.

2. *Does the preclusion of § 212(c) relief have an impermissible retroactive effect?*

a. *Did Congress clearly intend for IMMACT to have a retroactive effect?*

 Plaintiff concedes that "it is beyond dispute that, within constitutional limits, Congress has the power to enact laws with retrospective effect." *St. Cyr,* 533 U.S. at 316, 121 S.Ct. 2271. According to the Supreme Court in *St. Cyr,* "[a] statute may not be applied retroactively, however, absent a clear indication from Congress that it intended such a result," thereby assuring that "Congress itself has affirmatively considered the potential un-

fairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Id.* In determining whether IMMACT's prohibition on § 212(c) relief has an impermissible retroactive effect on Melo, therefore, this Court must first ascertain whether Congress clearly directed that IMMACT be applied retroactively. *See id.* The standard for finding such unambiguous direction is a demanding one, requiring statutory language that is "so clear that it could sustain only one interpretation." *Id.* at 317, 121 S.Ct. 2271. Both Melo and the Government acknowledge that the 1993 decision by the First Circuit in *Barreiro v. Immiq'n and Natural'n Serv.,* 989 F.2d 62 (1st Cir.1993), is the starting point for this analysis.

In *Barreiro,* the First Circuit held that IMMACT's five-year bar applied retroactively to bar § 212(c) relief to an aggravated felon whose conviction and sentence predated IMMACT. 989 F.2d at 64. The petitioner in that case, an LPR, was convicted in 1984 of possession of a controlled substance, and was sentenced to ten to fifteen years. In 1992, two years after the passage of IMMACT, while the petitioner was still in prison, the Government issued an order to show cause why the petitioner should not be deported because of his conviction. That same year, the petitioner sought a waiver of deportation pursuant to § 212(c). The BIA denied the petitioner's request for a waiver based on IMMACT. Upholding the BIA, the First Circuit denied the petitioner's request for a waiver,

---

**22.** While this Court rejects the Government's argument that IMMACT is prospective as applied to Melo based on his post-IMMACT conviction, this Court does not mean to suggest that IMMACT is therefore impermissibly retroactive. "A statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment," *Landgraf v. USI Film Products,* 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), such as time served by Melo prior to the enactment of IMMACT. "The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at 270, 114 S.Ct. 1483.

concluding that IMMACT's five-year bar included time served in prison prior to the enactment of IMMACT in 1990. Significantly, the court based its decision, in part, on a technical amendment to IM-MACT, § 306(a)(11)(B) of TINA, which, the court determined, reflected a clear congressional intent to make IMMACT apply retroactively "to convictions entered before, on, or after" the date of IM-MACT's enactment.[23] *Barreiro*, 989 F.2d at 64; *see Wallace*, 24 F.Supp.2d at 108 (citing *Barreiro* for "clear Congressional intent to make [IMMACT's] restriction on § 212(c) relief operate retroactively"). The First Circuit recently reiterated the holding of *Barreiro* in *Gomes*, where, in a footnote to its decision, the court stated that IMMACT's prohibition on § 212(c) waivers applies retroactively to convictions before the enactment of IMMACT. *Gomes*, 311 F.3d at 45 n. 2.[24] Notwithstanding the lack of any express statutory language making IMMACT's bar on § 212(c) relief retroactive, the First Circuit has unequivocally held that Congress intended for IMMACT's preclusion of § 212(c) relief for certain aggravated felons to apply retroactively to convictions entered before the date of IMMACT's enactment. Therefore, Melo's claim that

IMMACT has an impermissible retroactive effect fails.

b. *Does IMMACT upset considerations of fair notice, reasonable reliance, and settled expectations?*

██ Notwithstanding the First Circuit's determination that Congress intended IMMACT to be retroactive, Melo argues that this does not end the inquiry, because, under the Supreme Court's reasoning in *St. Cyr*, *Barreiro* and *Gomes* are distinguishable from the facts in this case. (Pet'r's Supp'l Mem. at 6–7.) Specifically, Melo contends that because neither *Barreiro* nor *Gomes* addressed the permissibility of IMMACT's retroactive effect in the context of convictions obtained as the result of plea agreements,[25] a second level of scrutiny is required. (*Id.* at 8.) Citing *St. Cyr*, Melo states that "[t]he second step is to determine whether, if applied retroactively, the statute 'attaches new legal consequences to events completed before its enactment,'" which would thereby render the statute's retroactive effect impermissible. (Pet'r's Supp'l Mem. at 8 (quoting *St. Cyr*, 533 U.S. at 321, 121 S.Ct. 2271).)

In *St. Cyr*, the Supreme Court held that the IIRIRA (enacted in 1996), which repealed § 212(c) relief in its entirety, did

23. The statutory provision of TINA to which the court cited does not explicitly apply to § 511(b) of IMMACT (the section that pertains to the preclusion of § 212(c) waivers), but rather is applicable only to § 513(b) of IMMACT (a section that relates to the preclusion of temporary stays of deportation pending judicial appeal under INA § 106(a)(3), 8 U.S.C. § 1105a(a)(3)). *See Barreiro*, 989 F.2d at 63. Nevertheless, the court stated that "we believe that although Congress amended only § 513(b), its failure to amend § 511(b) correspondingly was a simple oversight." *Id.* at 64. Thus, under *Barreiro*, IMMACT retroactively applies to bar the availability of both § 212(c) permanent waivers of deportation as well as temporary stays of deportation to ag-

gravated felons who have served more than five years in prison.

24. While noting that IMMACT was retroactive, the *Gomes* court concluded that there was no retroactive effect on the facts of that case because the petitioner's conviction took place in 1992, well after the enactment of IMMACT.

25. The court in *Barreiro* did not distinguish between an alien who pleaded guilty and an alien who was convicted after exercising his or her right to a trial, but rather ruled on IMMACT's retroactive effect generally. 989 F.2d at 63. *Gomes*, on the other hand, involved an alien who was convicted by a jury. 311 F.3d at 44.

not apply retroactively to aliens who pleaded guilty to crimes before the IIRIRA's enactment and who were eligible for such relief at the time of their plea agreements. Finding no clear congressional intent to apply the IIRIRA retroactively, the Court turned to the second step of the retroactivity analysis, focusing on the petitioner's reasonable reliance on the continued availability of discretionary relief from deportation at the time he pleaded guilty. "Because [the petitioner], and other aliens like him, almost certainly relied upon [the likelihood of receiving § 212(c) relief] in deciding whether to forgo their right to a trial," the Court reasoned, "it would surely be contrary to 'familiar considerations of fair notice, reasonable reliance, and settled expectations' to hold that IIRIRA's subsequent restrictions deprive them of any possibility of such relief." *St. Cyr*, 533 U.S. at 323–25, 121 S.Ct. 2271 (quoting *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483); *see id.* at 322, 121 S.Ct. 2271 ("There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions."). The elimination of § 212(c) relief, the Court held, retroactively unsettled the aliens' reliance "on the state of the law at the time of their plea agreement," and therefore produced an "obvious and severe" and impermissible retroactive effect. *Id.* at 325 & n. 55, 121 S.Ct. 2271. Applying the general presumption against retroactivity, the Court held that § 212(c) relief remained available for those aliens who pleaded guilty prior to the enactment of the IIRIRA in reasonable reliance on their continued eligibility for discretionary relief.

Melo knows that *St. Cyr* alone does not compel the conclusion he seeks. To bolster his claim, he points to the Ninth Circuit's 2003 decision in *Toia v. Fasano*, 334 F.3d 917 (9th Cir.2003). In that case, the court specifically addressed whether the reasoning of *St. Cyr* applies equally to aggravated felons who pleaded guilty prior to the enactment of IMMACT in reliance on the availability of § 212(c) relief. "In the absence of clear congressional intent to apply the statute retroactively," the court found that "[e]xtinguishing the availability of § 212(c) relief for aliens who pleaded guilty with the expectation that they would be eligible for such relief, upsets 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Toia*, 334 F.3d at 920–921 (quoting *St. Cyr*, 533 U.S. at 323, 121 S.Ct. 2271). Having determined that the statute had an impermissible retroactive effect on those aggravated felons who pleaded guilty prior to the enactment of IMMACT and who were otherwise eligible for such relief, the court held that such felons were entitled to apply for § 212(c) relief. *Id.* Significantly, the court concluded that *St. Cyr* compelled this result, and expressly overruled its prior decision in the pre-*St. Cyr* case of *Samaniego–Meraz v. Immig'n and Natural'n Serv.*, 53 F.3d 254 (9th Cir.1995), *overruled by Toia*, 334 F.3d 917, to the extent that *Samaniego–Meraz* conflicted with its holding.[26]

The Government counters that, pursuant to the First Circuit's reasoning in *Barreiro* and *Gomes*, Congress clearly and expressly intended IMMACT's bar on § 212(c) relief to apply to all convictions—including those occurring prior to IMMACT's enactment—and nothing in *St. Cyr* changes this. (Resp't's Supp'l Mem. at 8.) Indeed, the

---

**26.** *Samaniego–Meraz* held that prohibiting aggravated felons convicted prior to 1990 from seeking § 212(c) relief did not create an impermissible retroactive effect. 53 F.3d at 256. As in *Barreiro*, the court did not address the distinction between felons convicted by a jury, and those who pleaded guilty.

First Circuit in *Gomes* was given an opportunity to revisit *Barreiro* post-*St. Cyr* and reaffirmed its central holding. *See Gomes*, 311 F.3d at 45 n. 2. Therefore, the Government contends, this Court need not inquire into whether the statute unsettled Melo's reasonable expectations by "attach[ing] a new disability, in respect to transactions or considerations already past," *St. Cyr*, 533 U.S. at 321, 121 S.Ct. 2271 (internal citation omitted). To the extent that First Circuit precedent does not end this Court's inquiry, however, the Government further suggests that *St. Cyr* and *Toia* are unavailing because unlike the petitioners in those cases, both of whom had a single conviction prior to the enactment of the statute at issue, Melo was convicted a second time—after the enactment of IMMACT. (Resp't's Supp'l Mem. at 9.) This intervening second conviction, the Government argues, eviscerated any retroactive effect, as well as any reasonable reliance that Melo may have had that his 1988 conviction would not be used against him.[27]

██ Because this Court finds that, pursuant to the First Circuit's reasoning in *Barreiro* and *Gomes*, Congress clearly and expressly intended IMMACT's § 212(c) bar to apply retroactively, this Court need not inquire into whether IMMACT upset Melo's reasonable reliance on § 212(c) relief. Where the statute in question unambiguously applies to pre-enactment conduct, congressional intent controls, and, notwithstanding Melo's arguments to the contrary, this Court's inquiry into IMMACT's retroactive effect necessarily ends. *See St. Cyr*, 533 U.S. at 320, 121 S.Ct. 2271; *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483 ("When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules."). Nevertheless, even if this Court were to look beyond *Barreiro*'s interpretation of congressional intent under IMMACT, it is clear that Melo could not have reasonably relied upon the availability of § 212(c) relief at the time he pleaded guilty in 1994. Put another way, to the extent that Melo relied "on the fact that

**27.** The Government also summarily rejects *Toia*'s conviction-by-guilty-plea/conviction-by-jury distinction, stating only that under *Barreiro*, "the five-year bar applies to all convictions occurring before IMMACT['s enactment]," and therefore, *"Toia* does not control." (Resp't's Supp'l Mem. at 9.) As Melo argues in his Second Supplemental Memorandum, the Government's refusal to recognize *Toia*'s extension of *St. Cyr*'s reasoning to the IMMACT context has been considerably weakened by the Government's recent passage of a final rule "acquiesce[ing] in the result of *Toia*," 69 Fed.Reg. 57826, 57830, Responses to Comments Received (Sept. 28, 2004) (codified at 8 C.F.R. pt. 1212), which rejects IMMACT's application to aggravated felons who pleaded guilty prior to the enactment of IMMACT. (*See* Pet'r's Sec. Supp'l Mem. at 3–4.) This rule, which became effective on October 28, 2004, provides, in relevant part, that "[a]n alien is not ineligible for sec-

tion 212(c) relief on account of an aggravated felony conviction entered pursuant to a plea agreement that was made before November 29, 1990." 8 C.F.R. § 1212.3(f)(4)(ii) (2004). Melo's point is valid as far as it goes. That is, the Government, by rule, appears to have acceded to an exception to the retroactive impact of IMMACT for convictions by guilty pleas entered before November 1990. However, the rule does nothing to change the continued ineligibility of "[a]n alien whose convictions for one or more aggravated felonies were entered pursuant to plea agreements made on or after [the enactment of IMMACT] . . . if he or she has served a term of imprisonment of five years or more for such aggravated felony or felonies." 8 C.F.R. 1212.3(f)(4)(i) (2004). The Government's argument that IMMACT bars Melo's eligibility based on a guilty plea entered after the enactment of IMMACT remains viable notwithstanding the rule.

the sentence he received as a result of his 1988 plea agreement could not be used in determining the number of years he served in prison" (Pet'r's Supp'l Mem. at 11) for purposes of IMMACT's five-year bar, Melo's reliance was unreasonable. ·

As noted by the Supreme Court in *St. Cyr*, "as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." 533 U.S. at 322, 121 S.Ct. 2271. In fact, at the time of Melo's second conviction, "it was widely recognized as a violation of an attorney's professional duty to her client not to advise her of the immigration consequences of a plea or conviction," and "[i]n some states, failure to do so was considered ineffective assistance of counsel." *Wallace*, 24 F.Supp.2d at 110. In Rhode Island and in several other states, moreover, the presiding judge must inform a defendant that, "if he or she is not a citizen of the United States, a plea of guilty or nolo contendere may have immigration consequences, including deportation." R.I. Gen. Laws § 12–12–22(b); *see Wallace*, 24 F.Supp.2d at 110–11. It is possible that when pleading guilty to the 1994 drug offense, Melo believed his 1988 sentence would not be used in the calculation of IMMACT's § 212(c) bar (Pet'r's Supp'l Mem. at 11). This belief was not reasonable reliance, however, because at the time of this plea, Melo knew, or should have known of the passage of IMMACT in 1990 and the holding of *Barreiro* in 1993.

This case is therefore distinguishable from *St. Cyr* and *Toia*, which found no clear congressional intent as to the retroactivity of the IIRIRA and IMMACT, respectively. Had Melo looked to First Circuit case law in support of his reliance on § 212(c) relief in 1994, he would have found none; in fact, he would have found case law going the opposite way. To the extent that the holdings of *St. Cyr* and

*Toia* raise reasonable doubts about *Barreiro*'s holding, the First Circuit has not found reason to revisit its holding as recently as 2002 in *Gomes*. In any event, these cases were certainly not around when Melo pleaded guilty in 1994, and thus, cannot justify his reliance in any way.

### B. *Proof of·Time Served*

▪ Melo argues that it is the Government's burden to establish that he actually served at least five years in order to impose IMMACT's bar on § 212(c) relief. (Pet'r's Supp'l Mem. at 12.) "Once the [Government] enters sufficient, probative evidence of the period of incarceration," Melo contends, "only then does the burden shift to the Petitioner to present evidence to cast doubt on the presented evidence." (*Id.*) According to Melo, the Government has not met its burden. As the regulations relating to burdens of proof in removal proceedings make clear, while the Government must prove "by clear and convincing evidence that the respondent is deportable as charged .... [t]he respondent shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion." 8 C.F.R. § 1240.8. Furthermore, "[i]f the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." *Id.*; *Brown v. Ashcroft*, 360 F.3d 346, 351 (2d Cir.2004) (reasoning that burden of proof was on alien with respect to § 212(c) eligibility, and therefore, evidence of time served on conviction was not presented by government as "substantive ground supporting ... remov[al]," but rather as "response to [alien's] defense to removability").

■ Melo does not argue that he is not deportable as charged, for which the Government has the burden of proof. Rather, he argues that he is entitled to § 212(c) relief from deportation. He, not the Government, bears the burden of proof as to this claim. As the Government points out, "[w]hile the [Government] routinely presents evidence showing that an alien does not qualify for relief from removal, it is the alien's burden to prove he possesses a defense to removal." (Resp't's Supp'l Mem. at 10.) While Melo points to several ambiguities in the record regarding the time that he served in prison,[28] these ambiguities are insufficient to rebut the substantial evidence in the record that he served at least five years in prison on aggravated felony convictions. Indeed, Melo's own statements admit as much. At a hearing before the Immigration Judge on February 14, 1996, Melo testified that while he "[didn't] know exactly how much time" he served on his first conviction, he "was incarcerated for at least three years." (Tr. of Imm. Hr'g, 2/14/96, at 193.) He also testified at that hearing that he was in custody from December, 1993, through January 7, 1996, on his second conviction. (*Id.* at 193–94.) At a subsequent hearing before an Immigration Judge more than six years later, on June 19, 2002, Melo testified that he served forty months on his first conviction, and twenty-six months on his second. (Tr. of Imm. Hr'g, 6/19/02,

at 34–35.) Whichever dates are used, the total adds up to greater than five years on two admittedly aggravated felony convictions. The incarceration dates set forth in the ACI Document, insofar as they roughly correspond with Melo's testimony, further bolster the determination that Melo served at least five years.

■ Therefore, this Court will not disturb the BIA's determination that Melo was not entitled to § 212(c) relief on this ground. (Dec. Bd. Imm. Appeals, 12/10/03, at 2–3.) As the First Circuit stated very recently in *Rodriguez–Ramirez v. Ashcroft,* 398 F.3d 120 (1st Cir. 2005), "[i]n immigration cases, a highly deferential standard of review obtains with respect to fact-driven issues. Putting aside errors of law—and none appears here—an inquiring court must uphold the BIA's resolution of such issues so long as its decision is supported by substantial evidence in the record." *Id.* at 123. Accordingly, Melo's claim that the Government did not meet its "burden of proof" concerning the time that Melo served in prison must fail.

### C. Post–Removal Detention

■ Melo also claims that his continued detention violates his right to substantive due process. This claim has no traction. As previously discussed, Melo was taken into custody on March 1, 2004.

---

28. Melo argues that the document from the Rhode Island Adult Correctional Institute (the "ACI Document"), submitted by the Government at the February 14, 1996 hearing, lists only Melo's projected release dates—not his actual release dates—on both convictions, and therefore does not account for a reduced period of incarceration based on factors such as overcrowding, good time, and rehabilitation. (Pet'r's Supp'l Mem. at 12.) Furthermore, Melo contends that the Government's reliance upon Melo's testimony before the Immigration Judge is misplaced, because of Melo's admissions of uncertainty as to the dates of

his incarceration. (Pet'r's Mem. Supp. Pet. at 14.) Finally, Melo argues that the Immigration Judge, finding that Melo "*apparently* actually served approximately 66 months," (Oral Dec. Imm. J., 6/19/02, at 2 (emphasis added)) merely assumed that Melo served at least five years without hearing evidence on this issue. (Tr. of Hr'g, C.A. No. 04–66S, 6/17/04.) Thus, Melo argues, the BIA relied on an "unsubstantiated, uncertified record of projected release dates" in finding that Melo served at least five years, in violation of the substantial evidence standard. (Pet'r's Supp'l Mem. at 12.)

8 U.S.C. § 1231(a)(2) provides that after entry of a final removal order and during the ninety-day period that follows, an alien must be held in custody. *See Zadvydas v. Davis,* 533 U.S. 678, 683, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Once this post-removal period has expired, the alien may be released under supervision, or the Government may continue to detain the alien. 8 U.S.C. § 1231(a)(6). According to the Supreme Court, it is presumptively reasonable for the Government to detain an alien up to six months after an alien is ordered removed. *Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* In this case, Melo offers no evidence demonstrating there was "no significant likelihood of removal in the reasonably foreseeable future,"[29] and thus, his substantive due process claim fails. *See Podoprigora v. Chadbourne,* No. Civ.A. 03–420 T., 2004 WL 725057, at *4 (D.R.I. Mar.2, 2004) (recommending that post-removal-order detention of alien for fourteen months did not violate alien's due process rights, where alien had not demonstrated that his removal was "not in the reasonably foreseeable future").

### IV. *Conclusion*

For the foregoing reasons, Melo's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief is DENIED as to all claims, including all declaratory and injunctive relief requested therein, and the Government's

Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

---

**29.** On the contrary, the record reveals quite the opposite. The Government's "Decision to Continue Detention" letter to Melo indicates that the Government "is making attempts to repatriate [Melo] by requesting the Government of Portugal to approve [Melo's] case for final removal[ ]." (Letter from DHS to Melo, 6/3/04.) Because "the Government of Portugal regularly approves cases for removal and there is no indication at this time that [Melo's] case will not be approved," there is a significant likelihood of Melo's removal in the reasonably foreseeable future. *See id.*